Lake, Ch. J.
This is a petition in error from Dodge county. In the court below the case was tried to a jury and a verdict returned in favor of DeLamater for the amount of the promissory note which was the subject of the action. Kittle thereupon moved for a new trial on the sole *429 ground that the verdict was “against, and contrary to the weight of evidence, and the law of the case.” This motion having been overruled and exception duly taken, we are presented with the simple question, whether the evidence submitted to the jury justified them in their verdict? We are met at the outset with this wholesome rule of practice, a rule which courts generally observe, that the verdict of a j ury should not be set aside on the ground of its being against the weight of evidence, unless it is clearly so. And more especially ought this rule to be observed by reviewing courts.
The alleged grounds of defense were three in number: first, that DeLamater was not the owner of the note; second, that the note was given by Kittle to the payees, Asher & Adams of New York, a firm engaged in the business of printing maps; that the consideration for giving said note was an agreement on the part of Asher & Adams to print and publish for Kittle, a large number of maps of the United States, and the state of Nebraska, on each of which maps there was to be printed a lottery scheme, for the distribution by chance of a large quantity of lots and other property in and about the city of Fremont in this state; and third, that Asher & Adams, failed to comply with the terms of said contract in several particulars, especially as to the quality of the work, and the time within which the maps were to be delivered, of all which the plaintiff had notice.
As to \hs, first point', it was very clearly shown that the note was duly indorsed to the plaintiff, and that at least whatever interest Asher & Adams had therein, he succeeded to by the indorsement. Of this there could have been no dispute.
On the second point we think the testimony shows very conclusively, that this lottery scheme originated with Kittle alone, and was the product of his own brain; and that Asher & Adams, as artisans merely, were employed *430 by him to print the maps and scheme, for a price agreed upon, and nothing more. The publication, or distribution of the maps they had nothing whatever to do with. They may have known, and probably did in fact know, what use Kittle intended to put the maps to, and that it was an illegal one, but that is not enough to make them pa/rticeps criminis, as we held when this question was before us on another occasion. Kittle v. DeLamater 3 Neb., 325, and cases there cited on this point.
As to the alleged failure of Asher & Adams, to perform their agreement, there is some little conflict in the testimony, but the clear preponderance is against the plaintiff in error. It is very satisfactorily shown that the work of printing and mounting the maps went forward under the personal direction and supervision of Kittle, who was in New York at the time, until some twenty thousand copies had been printed, and several thousand actually delivered to him, when, for some reason becoming satisfied that his scheme would not prove to be a success financially, he refused to take any more of them, abandoned the enterprise, and returned home.
We fail to discover any reason, either in the facts or the law of the case, why Kittle should not be required to pay for the maps. The testimony was not only sufficent to sustain the verdict, but we do not see how the jury could have found otherwise.
Judgment affirmed.