## Austin B. Webber v. John C. Donnelly.

*Practice: Weight of evidence:* Where there was evidence tending to sustain a fact found by the court below, his decision upon the weight of the evidence will not be reviewed.

*Practice: Rulings that do not prejudice.* Where an objection has been sustained to a question which was put with the view of establishing a fact which the court afterwards found in favor of the party who put the question, that ruling becomes immaterial, and will not be reviewed.

*Contracts: Place: Order for liquors: Sale in another state: Presumption.* Where an order is sent by mail from Detroit to Chicago, in pursuance of which intoxicating liquors are there shipped to the person giving the order, and are afterwards received by him at Detroit, the contract is an Illinois contract and presumably valid, and it is not affected by the Michigan statute.

*Vendor's knowledge that vendee intends to make illegal use of goods sold.* Mere knowledge on the part of the vendor, that his vendee at the time of the purchase of property intends to use it for an illegal purpose, will not prevent his recovering from the vendee the value of the property.

*Heard January 20. Decided April 11.*

Error to Superior Court of Detroit.

*John C. Howland* and *Maybury & Conely,* for plaintiff in error.

*James T. Keena* and *Atkinson & Atkinson,* for defendant in error.

MARSTON, J:

Donnelly sued Webber in assumpsit to recover the amount of a certain draft drawn by Enright & Kelly of Chicago upon Webber. The draft purported to have been accepted by one Henshaw. Defendant denied the authority of Henshaw to accept the draft, and denied any subsequent ratification of his act. The defense claimed that the plaintiff was not a *bona fide* holder, and set up failure and illegality of consideration as a defense.

In reference to the authority of Henshaw to accept the draft, the court below found that he had no such authority.

The court, however, did find that the subsequent conversations and acts of Webber amounted to an assent or ratification of the act of Henshaw in accepting the draft, and that he thereby rendered himself liable the same as though he had himself written the acceptance. An examination of the record shows that evidence was introduced tending to show such ratification. Whether it was sufficient to establish that fact, is not for this court to determine. That question was addressed to the judgment of the court below, and the conclusion there arrived at as to the weight of the evidence is conclusive. It appeared that C. S. Parsons called upon the defendant, and presented the draft to him for payment. Upon cross-examination of this witness he was asked: "By whose authority did you call upon him?" This was objected to and sustained. This question was asked with a view to proving that the plaintiff was not a *bona fide* holder. The court, however, found that the plaintiff was not a *bona fide* holder of the draft, so that the ruling upon this question under the finding becomes immaterial. The same may be said of the question asked the witness Atkinson: "How did he [Kelly] come to turn it [the draft] over to you?"

The important question raised by the record, and relied upon in this court, yet remains to be considered.

It appears from the finding of the court that Messrs. Enright & Kelly, prior to and on the 22d of February, 1875, were co-partners, engaged in the business of selling spirituous and intoxicating liquors at wholesale in the city of Chicago; that the defendant Webber, at and during the same time, and until May, 1875, was engaged in a similar business in the city of Detroit; that on the 22d day of February, 1875, Webber, at Detroit, sent by mail to Enright & Kelly, at Chicago, an order for five barrels of whiskey, and that in pursuance of this order Enright & Kelly shipped the goods mentioned to Webber, delivering them to the Michigan Central R. R. Co. at Chicago, to be conveyed in the ordinary course by said company to defendant in Detroit; that the goods were so conveyed and received by defendant, and entered

into and became part of his stock in trade, and that the same were spirituous and intoxicating liquors; that for a long time prior to the giving of this order Webber had purchased such liquors of Enright & Kelly; that in the customary course of dealing between the parties, contracts for the sale of such liquors by Enright & Kelly had generally been made by Kelly in person, at the store of Webber, and that Kelly had on several occasions been at the store of Webber when his liquors were sold, and knew his course of trade.

Upon the trial, defendant offered to show "that Enright & Kelly sold those liquors to Mr. Webber in the ordinary course of business transactions with Webber, and they knew that Webber was a dealer in spirituous and intoxicating liquors here, contrary to the laws of Michigan." This was objected to, the evidence excluded, and exception taken.

The contract entered into between the parties was made in the state of Illinois, and such a contract must be presumed to be valid in that state, no showing to the contrary having been made.—*Kling v. Fries, supra p. 275,* and *Roethke v. Philip Best Brewing Co., supra p. 340.*

Does then the fact of Enright & Kelly's knowledge at the time of the sale, that Webber was a dealer in spirituous and intoxicating liquors in Detroit contrary to the laws of Michigan, constitute a defense to an action brought to recover the value of the liquors so sold?

It has been held that where the plaintiff not only had knowledge of the illegal purpose of the defendant, but sold the liquors with reference to that illegal purpose, and to enable the defendant to effect it, he could not recover.— *Webster v. Munger, 8 Gray, 587.* Where the order for the liquors was given in Vermont but the sale completed in New York, the seller knowing that they were to be sold in violation of law, it was held that it must be considered as a sale made in Vermont, and that the plaintiff could not recover.—*Zerrilt v. Bartlett, 21 Vt., 184.* Where an agent comes into the state where such sales are prohib-

ited, and personally solicits the order, although the order then given may be so acted upon in another state that the contract will be held to have been entered into there, yet the plaintiff will not be entitled to recover.— *Wilson v. Stratton, 47 Me., 120.* Where the plaintiff forwards the goods to the defendant in a disguised form, erases marks upon the casks, packs the goods in a particular and unusual way to avoid detection, or does any positive act, beyond the mere fact of sale, in aid of the unlawful purpose, he cannot recover.— *Aiken v. Blaisdell, 41 Vt., 655; Holman v. Johnson, Cowp., 341; Clugas v. Penaluna, 4 T. R., 466; Waymell v. Reed, 5 T. R., 599.*

In most of these cases the vendor not only has knowledge of the illegal use to be made of the goods purchased, but he does some positive act to enable the purchaser the more successfully to violate the law of the country to which the goods are to be taken.

The undoubted weight of authority, however, holds that mere knowledge by the vendor that the vendee, at the time of the purchase of property, intends to use it for an illegal purpose, will not prevent his recovering from the vendee the value of the property.— See *Tracy v. Talmage, 14 N. Y., 162,* and *Hill v. Spear, 50 N. H., 253,* where the question is discussed in all its bearings, and all the authorities reviewed and commented upon.

While it is quite probable that no distinction should be made between contracts *malum in se* and *malum prohibitum,* yet in examining this question we must keep in mind the fact that the contract in this case does not come within the former class, and that there was no showing that it came within the latter either, where made. We cannot, therefore, apply the same reasoning in this case that we would to a contract *malum in se.* In one of the cases where this question has been discussed, the strong cases of selling arsenic, with the knowledge that it is to be used by the buyer to poison another, is put, and it is there said the vendor in that case could not recover the contract price of the arsenic. The conclu-

sion there arrived at is unquestionably correct. He could neither recover in the country where the arsenic was sold, nor where it was carried to for the purpose of effectuating the unlawful intent and object. Such a contract would be void where made, and void everywhere. Here, however, the contract was a valid one where made, and it is not disputed but that they could, in an action brought upon the contract in Illinois, have recovered. I do not consider it necessary to discuss this case at length. It is very doubtful whether any thing new could be added to the very elaborate arguments in the two cases already referred to. I am of opinion that there is no error in the record, and that the judgment should be affirmed, with costs.

The other Justices concurred.