Stone, J.
Two points are relied upon by plaintiff in error to reverse the judgment—
First—That there was no privity of contract between the parties to the suit; that the evidence is insufficient to show a *66 complete sale of the property, or, as counsel puts it, the evidence does not show that the plaintiffs in error “purchased the article,” the price of which is sought to be recovered.
Second—That the article which was the subject of the alleged sale, was a “gambling device,” and that, therefore, the price of it, if sold, is not recoverable at law by the vendor. '
We think the evidence fairly supports the findings of the Court below. Plaintiff below was dealing in liquors and tobacco in Denver. Defendants were engaged in the same business in another part of the city.
One Brueggeman, defendants’ clerk, came to the store of plaintiff and asked if he had such a «thing as a “case keeper.” Plaintiff replied that he did not know what that was. Bruegge-man explained that it was used in gambling. He then noticed an article in the show case, and said that was what was wanted. Plaintiff said it had been left there by the owner for sale; he stated the probable price, according to a price list, and said he would see what it could be bought for. Brueggeman stated that he had received an order for such an article from a regular customer in a mountain town, and told plaintiff to buy it and send it dowrn to the store of defendants. Plaintiff bought it, and sent it to defendants’ store by a messenger, who offered it to one of the defendants,*and was by him told to take it to the clerk Brueggeman, and it was delivered accordingly, together with a bill, for the price of $16. Brueggeman asked the messenger, who was a brother of plaintiff, if he wanted the money for it, and the latter said it would be charged to the firm. The article was sent, in the firm name, of the defendants, to the customer, and afterwards returned to them, for the alleged reason that it was. too expensive. Defendants took it back to plaintiff, who refused to receive it, and, on refusal of defendants to pay plaintiff the price, suit wTas brought to recover the value. The article was not in the line of trade of either plaintiff or defendants.
There was some conflict of testimony as to whether the sale was conditional upon the acceptance of the article by the customer of defendants; but, upon the whole evidence as to what w'as said and done by both parties respectively, wre think the transaction fairly constituted a complete sale, delivery and ac *67 ceptance, upon which defendants became liable to plaintiff for the stated price. The whole transaction was with the full knowledge and implied assent of the senior member of the defendants’ firm, and the point of counsel, that the clerk who attended to filling the order was not authorized to make the purchase because the article was one not in the regular line of defendants’ trade, is without force.
The second point is not sustainable. If this were a suit by plaintiffs in error against their vendee to recover the price of the article sold, and to be used by such vendee for gambling purposes, this objection might or might not avail to bar a recovery, dependent upon the extent to which the transaction might show the vendor’s participation with the vendee in furtherance of an unlawful act or purpose. But here the sale was by one merchant to another, where the vendor was affected by neither intent of participation nor knowledge of unlawful purpose in his vendee. To say that a bare knowledge that the article sold was capable of unlawful use—that it probably would be put to such use by some remote vendee—-is sufficient to vitiate a sale, would be a conclusion too far fetched for legal consideration applicable to the law of contracts. Such a rule would operate to vitiate sales of ordinary playing cards, billiard tables, race horses, and many other articles and kinds of property of legitimate trade, which are capable of being made the means of gambling contrary to statute. Such a rule would impose an unreasonable restraint upon commerce and trade. In the case of Hill v. Spear, 50 N. H., 253, where all the then decided cases, both in England and this country, bearing upon this question, are reviewed, it is said, that—
‘‘It would be wholly impracticable, as well as unwise and unjust, because restraining to an unreasonable extent the trade and commerce of the country, to require the vendor of all sorts of merchantable goods to scrutinize the plans and purposes of the purchaser with regard to the use of the commodity, and to sell only at the peril of forfeiting the price in every case where a jury might find that the seller had reason to suppose that the purchaser intended to make an improper or unlawful use of the article.”
The rule best supported by the authorities is, that to invalidate a sale on the ground of such illegal consideration, more *68 is required than mere knowledge on the part of the vendor that the article sold will be put to an illegal use by the vendee. Beyond such bare knowledge, the rule requires evidence that the vendor, by the transaction, participates in or intentionally aids in furtherance of an unlawful act. In the case of Hill v. Spear, supra, it is stated, as a conclusion upon all the authorities reviewed, that the principle pervading the whole current of the authorities is, that—
“The validity of the plaintiff’s claim to recover the price of goods sold, with knowledge that the purchaser intends to make an illegal use of them, depends upon the circumstance, whether or not the original vendor participated actively, to a greater or less extent, in the subsequent unlawful disposition of the goods, or whether the expectation of advantage to him, growing out of the unlawful disposition of the goods by the purchaser, entered into and constituted a part of the inducement and consideration of the original sale.”
And it is further said in the same case, that it is one thing to furnish a person, by means of a lawful sale and purchase, with articles which the purchaser may, and probably will, apply to an improper use; and another, and very different, thing to incite, aid and encourage the purchaser in committing an offense against law, with or by means of the property which he may use for lawful and proper purposes.
In Gaylord v. Soragen, 32 Vt., 110, it is held that mere knowledge of the unlawful intent of the vendee by the vendor will not bar the latter from enforcing his contract to recover for the goods; yet it is well settled, that if he in any way aid the vendee in his unlawful design to violate the law, such participation in the illegal undertaking will disqualify him from maintaining an action on his contract in that State.
“ The participation by the vendor must be active to some extent; he must do something, though indirectly, in furtherance of the vendee’s design to violate the law. Mere omission to act is not enough, but positive acts in aid of the unlawful purpose, however slight, is sufficient.”
Without reviewing the authorities, which present some apparent conflict, we think the foregoing citations sufficiently set out the rule which is most reasonable, and sustained by the weight of decisions, and, in support of which, we cite the fol *69 lowing additional cases: Green v. Clifford, 3 Clifford (U. S. Cir.), 494; Adams v. Coulliard, 102 Mass., 167; McGavock v. Puryear, 6 Coldwell, 34; Benjamin on Sales, Secs. 503-512, and note (n).
J. W. Horner, attorney for plaintiff in error.
E. B. Sleeth, attorney for defendants in error.
If the cases of Spurgeon v. McElvain, 6 Ham., 442, and Mosher v. Griffin, 51 Ill., 184, are to be regarded as sound expositions of the law, they are clearly inapplicable to the present case, wherein the facts negative even the existence of knowledge on the part of the vendor that his vendee intended a wrongful use of the property sold.
The judgment of the County Court is affirmed.