ANHEUSER-BUSCH BREWING ASSOCIATION *vs.* EMMA MASON.

September 23, 1890.

**Sale for Unlawful Use—Recovery of Price.**—Plaintiff, a corporation, by its agent, sold and furnished bottled beer to the defendant, the keeper of a house of prostitution, as the agent well knew. While he had no knowledge of just what was to be done with the beer, the agent supposed at the time it was furnished that it was to be used or sold in the brothel. No other facts appearing, it is *held* that plaintiff can recover a balance claimed to be due from defendant for and on account of said sale.

Appeal by plaintiff from an order of the municipal court of St. Paul, refusing a new trial after a dismissal ordered at the trial. The action was to recover a balance of $122 for goods sold and delivered.

*John L. Townley,* for appellant.

*Johns, Michael & Johns,* for respondent.

COLLINS, J. This action was brought to recover a balance claimed to be due plaintiff (a corporation) for and on account of bottled beer sold to the defendant. The answer alleged that at the time of the sale defendant, as plaintiff well knew, was the keeper of a house of

prostitution; that plaintiff sold the beer expressly for use and dispensation in and for carrying on and maintaining said house; and that when sold and delivered it was agreed between plaintiff and defendant that the beer was to be paid for out of the profits accruing to the latter from her unlawful occupation. On the trial, defendant made no attempt to establish the defence as pleaded, but relied wholly upon admissions made by plaintiff's agent, when testifying, that he did not know just what was done with the beer, but that, when selling it to defendant, he supposed she would sell or use it in her brothel. On this admission, as we understand the record, the case was dismissed by the trial court.

While it would seem quite unnecessary so to do, it may be well to call attention at the outset to the fact that this case should not be confounded with one wherein the vendor in selling his goods has violated a statute requiring him to first procure a license, as was that of *Solomon* v. *Dreschler*, 4 Minn. 197, (278.) Nor is it one in which the vendor has sold a proper article of merchandise in a legitimate way, but with the knowledge that it is to be disposed of by the vendee in direct violation of the law; for illustration, a sale of spirituous liquors by a qualified wholesale dealer, with full knowledge that the purchaser intended to retail the same in defiance of a prohibitory law, or without first obtaining the required license to sell; or a sale of poison by a druggist, knowing that it was intended for use in committing murder. The illegality of the transaction now under discussion occurs, if at all, in a matter collateral to the sale, incidentally implicated with it, and out of considerations of public policy solely. It has been well said that the consideration essential to a valid contract must not only be valuable, but it must be lawful, not repugnant to law or sound policy or good morals. *Ex turpi contractu actio non oritur.* The reports, both English and American, are replete with cases in which contracts of all descriptions have been held invalid on account of an illegality of consideration, illustrations of the acknowledged rule that contracts are unlawful and non-enforceable when founded on a consideration *contra bonos mores,* or against the principles of sound policy, or founded in fraud. or in contravention of positive provisions of a statute. The utmost difficulty

has been experienced by the courts in applying the general rule, however, and an examination of the authorities wherein an application has been necessary will convince the reader that the conclusions reached and announced in the English tribunals are beyond reasonable reconciliation. This want of harmony, and that more uniform and consistent results have obtained in this country, is thoroughly demonstrated in two cases with us, (*Tracy* v. *Talmage*,—first opinion by Judge Selden, and the second, on motion for rehearing, by Judge Comstock,—14 N. Y. 162, and *Hill* v. *Spear*, 50 N. H. 253,) in each of which the principal cases in both countries are ably and carefully reviewed, and the law applicable to the question involved in this action stated in accordance with the great weight of authority in the United States as well as in England. These cases, now regarded as leading on this side of the Atlantic, announce the rule to be that mere knowledge by a vendor of the unlawful intent of a vendee will not bar a recovery upon a contract of sale, yet, if, in any way, the former aids the latter in his unlawful design to violate a law, such participation will prevent him from maintaining an action to recover. The participation must be active to some extent. The vendor must do something in furtherance of the purchaser's design to transgress, but positive acts in aid of the unlawful purpose are sufficient, though slight. While it is certain that a contract is void when it is illegal or immoral, it is equally as certain that it is not void simply because there is something immoral or illegal in its surroundings or connections. It cannot be declared void merely because it tends to promote illegal or immoral purposes. The American text-writers generally admit this to be the prevailing rule of law in the states upon this point. 1 Whart. Cont. § 343; Hill. Sales, 490, 492; 1 Pars. Cont. 456; Story, Cont. (5th Ed.) § 671; Story, Confl. Law, § 253; Greenh. Pub. Pol. 589. However, it has been suggested that this statement is subject to the modification that the unlawful use of which the vendor is advised must not be a felony or crime involving great moral turpitude. See *Hanauer* v. *Doane*, 12 Wall. 342; *Tatum* v. *Kelley*, 25 Ark. 209; *Milner* v. *Patton*, 49 Ala. 423; *Lewis* v. *Latham*, 74 N. C. 283; *Bickel* v. *Sheets*, 24 Ind. 1; *Steele* v. *Curle*, 4 Dana, 381.

Without expressly indorsing the result in some of the cases, or all that has been said by the courts in their opinions when making an application to the facts then in hand, of the rule so exhaustively examined and approved in *Tracy* v. *Talmage,* and *Hill* v. *Spear, supra,* we cite, in support of the propositions therein contended for, and upon which we rest a reversal of the order of dismissal made by the court below, *Armstrong* v. *Toler,* 11 Wheat. 258; *Green* v. *Collins,* 3 Cliff. 494; *Dater* v. *Earl,* 3 Gray, 482; *Armfield* v. *Tate,* 7 Ired. 258; *Read* v. *Taft,* 3 R. I. 175; *Chency* v. *Duke,* 10 Gill & J. 11; *Kreiss* v. *Seligman,* 8 Barb. 439; *Michael* v. *Bacon,* 49 Mo. 474; *Brunswick* v. *Valleau,* 50 Iowa, 120; *Webber* v. *Donnelly,* 33 Mich. 469; *Bishop* v. *Honey,* 34 Tex. 245; *Wright* v. *Hughes,* 119 Ind. 324, (21 N. E. Rep. 907;) *Feineman* v. *Sachs,* 33 Kan. 621, (7 Pac. Rep. 222;) *Rose* v. *Mitchell,* 6 Colo. 102; *Banchor* v. *Mansel,* 47 Me. 58; *Henderson* v. *Waggoner,* 2 Lea, 133; *Gaylord* v. *Soragen,* 32 Vt. 110; *Mahood* v. *Tealza,* 26 La. Ann. 108; *Delavina* v. *Hill,* (N. H.) 19 Atl. Rep. 1000.

The agent who made the sales, upon whose testimony the defendant saw fit to rest her case, knew that she was engaged in the unlawful business of keeping a house of ill fame, and admits also that he supposed the beer would be used or sold in her place of business Nothing further was shown which connected the plaintiff or its agent with any violation of the law. The burden was upon the defendant to show that an enforcement of the contract would be in violation of the settled policy of the state, or injurious to the morals of its people, and no court should declare a contract illegal on doubtful or uncertain grounds. And it may be difficult to distinguish between the cases in which the vendor, with knowledge of the vendee's unlawful purpose, does not become a confederate, and those wherein he aids and assists to an extent sufficient to vitiate the sale; but this difficulty is not apparent in the case at bar.

Order reversed.