Evans, J.
On March 30', 1903, the plaintiff leased to the defendants certain premises to be used as a cigar store and a restaurant. The term of this lease was for six months, with the privilege to the second party to renew the same for an additional year. In September,. 1903, the lease was extended by indorsement on the back thereof to March 1, 1904, at an increased rental of $5 per month. The plaintiff exacted from the defendants a bond in the penal sum of $500, conditioned, in substance, that the defendants should engage in no unlawful business upon the premises, and that the plaintiff should be held harmless from any expenditure or costs or injunction or assessment' under the prohibitory laws of the State. The defendants caused or permitted intoxicating liquors to be sold upon the premises, and a mulct tax of $150 was levied and assessed against the property, and the plaintiff was compelled to pay the same in order *607 to. discharge his property from the lien thereof. He brings this action to recover the amount thereof, with interest.
The only defense which is relied on here is that the lease was made for the purpose of permitting one Shipley to sell liquors on the said premises in violation of law, and that the plaintiff was frequently in the said building, and knew the character of business that was being conducted by the said Shipley “at the time the lease was renewed and at the time the said bond was given.” Defendant Silvers was a liquor dealer, and Shirley was one of his traveling salesman. They did not give their personal attention to the conduct of the business on plaintiff’s premises. One Shipley had conducted the business for the defendants during the summer of 1903, and had sold intoxicating liquors thereon in violation of law. He continued in the service of the defendants for a short time after the extension of the lease. It is contended by the defendants that these circumstances are sufficient to warrant the jury in finding that the plaintiff knew at the time he executed the extension of the lease that the defendants intended to sell intoxicating liquors in violation of law. Hpon this premise of fact, the defendants contend, as a matter of law, that the bond was void, and that the plaintiff can recover nothing thereon. We can not concur in the defendants’ position — neither of fact nor of law.
The authorities are not altogether in harmony as to the rule which renders a contract void when it is entered into by one of the parties with the intent to violate the law, and where such intent is known or suspected by the other party. The great weight of authority, however, in our opinion is that mere knowledge or suspicion on the part of the lessor that the. lessee intends to violate the law upon the property will not of itself render a contract void. In order to defeat a recovery for rent by the lessor, it must be shown that he participated in some degree, *608 however slight, in the wrongful purpose and intent that the property should be so used. Mere indifference on his part as to the intended use of the property is not sufficient. If the lessor in any way aids the lessee in his unlawful design, such participation will render the contract void. His relation to the unlawful purpose must be in some degree active, rather than merely passive or indifferent. If he does any act in aid of the unlawful purpose, however slight, it is sufficient participation on his part to defeat recovery. But, until there be some degree of connivance shown, a contract will not be avoided. Tracy v. Talmage, 14 N. Y. 162 (67 Am. Dec. 132); Chamberlin v. Fisher, 117 Mich. 428 (75 N. W. 931) ; Webber v. Donnelly, 33 Mich. 469; Anheuser Brewing Co. v. Mason, 44 Minn. 318 (46 N. W. 558, 9 L. R. A. 506, 20 Am. St. Rep. 580). The law finds itself in close quarters at this point, and is confronted with danger at either side. On thie one hand, it must needs withhold its sanction from contracts entered into for criminal purposes ; and, on the other hand, it ought not to go so far as to offer undue inducement to beneficiaries, of contracts to taint them' with criminality for the very purpose of avoiding liability thereon after receiving the benefits of performance by the other party, lest the latter evil become greater than the first. While, therefore, it is true that the line of distinction drawn in the authorities above cited is somewhat fine, it is also true that it required a thin blade to divide the “joints and marrow” of one evil to be checked and another to be avoided. This court has not heretofore passed directly upon this question. The eases cited by appellant relate chiefly to our statute', viz., section 1550, Code 1873, and section 2423, Code 1897. This section has no application to this case.
Under the evidence in this case, the most that can be said is thát the plaintiff feared or suspected that intoxicating liquors might be sold upon the premises. There *609 is no testimony indicating any connivance on his part. The lease expressly forbade the use of the premises for any unlawful purpose. It is urged in argument that this was a mere pretense to cover up the real purpose; but the evidence does not warrant such contention. The defendant Shirley testified to his conversation with the plaintiff as follows: “Mr. Harbison said that he did not want anything sold in there that would cause a nuisance. He said: ‘You want it for restaurant purpose. All right, take for restaurant purposes.’ ” This- oral statement is in harmony with the prohibition of the lease, and indicates no ulterior purpose on the part of the plaintiff. There was no other evidence on the question. The burden was upon the defendants to prove their affirmative defense. They have wholly failed to do so. The trial court directed a verdict for the plaintiff and entered judgment for the amount claimed.
The judgment is right, and is affirmed.