.BANK OE COMMERCE & TRUST Co. *et al v. BURKE et al.**

(*Jackson.* April Term, 1916.)

1. LANDLORD AND TENANT. Leases. Legality of object.

Where a lease of a building does not itself set forth an illegal in-
tent or use, and where nothing else appears, the lessor is
not debarred from recovery of rent by his knowledge that the
tenant intends to put the premises to illegal use. (*Post, pp.*
24, 25.)

Cases cited and approved: Ashford v. Mace, 103 Ark., 114; Barbi-
son v. Shirley, 139 Iowa, 605; Anheuser-Busch Brewing Ass'n
v. Masin, 44 Minn., 319; Naff v. Crawford, 48 Tenn., 111; Ted-
der v. Odom, 49 Tenn., 68; Bond v. Perkins, 51 Tenn., 364;
.Jones v. Bank, 56 Tenn., 455; Puryear v. McGavock, 56 Tenn.,
461; Henderson v. Waggoner, 70 Tenn., 133; Heart v. East
Tenn. Brewing Co., 121 Tenn., 69; Griel Bros. Co. v. Mabson,
179 Ala., 444; Hayton v. Seattle Brewing, etc., Co., 66 Wash.,
248.

Case cited and distinguished: McGavock v. Puryear, 46 Tenn.,
34.

:2. LANDLORD AND TENANT. Leases. Legality of object.

Although a lease of a building does not iself set forth any illegal
intent or use, if the lessor at the time of leasing knows and in-
tends that the premises shall be used for an illegal purpose,
such as prohibited sales of intoxicating liquor, and he does
anything in furtherance of the trangression, he cannot recover
rent. (*Post, pp.* 25, 26.)

Case cited and distinguished: Harbison v. Shirley, 139 Iowa, 605.

3. LANDLORD AND TENANT. Leases. Legality of object.
"Storehouse."

Where a building had long been occupied as a saloon, was so
outfitted, was offered for rent as peculiarly valuable for a

---

*As to effect of landlord's knowledge that tenant intends to
use premises in violation of law see notes in 19 L. R. A. (N. S.), 662,
39 L. R. A. (N. S.), 1104.

saloon business, and after the leasing was used for a saloon by the lessee and sublessee with the knowledge of the agents of lessors, although it was leased in terms for use as a "storehouse," lessors could not recover rent (citing Words and Phrases, First Series, Storehouse). (*Post, pp.* 26, 27.)

Case cited and approved: Commonwealth v. Whalen, 131 Mass., 419.

4. **LANDLORD AND TENANT.** Leases. Legality of object.

If premises be leased for lawful purposes, the mere noninterference by landlord with subsequent illegal traffic of his tenant, after becoming aware of it, does not involve him in the tenant's guilt as showing participation. (*Post, p.* 27.)

Cases cited and approved: Crofton v. State, 25 Ohio St., 249; Koester v. State, 36 Kan., 27; Kessler v. Pearson, 126 Ga., 725.

5. **LANDLORD AND TENANT.** Actions for rent. Evidence of illegal use of premises.

Acts of the parties to the lease, before and after its making, may be proven to show their intent in making it. (*Post, p.* 27.)

Cases cited and approved: Egan v. Gordon, 65 Minn., 505; Updike v. Campbell, 4 E. D. Smith (N. Y.), 570.

---

FROM SHELBY

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—F. H. HEISKELL, Chancellor.

SIVLEY & EVANS, for complainant.

A. J. CALHOUN and W. M. STANTON, for defendants.

Mr. Justice Williams delivered the opinion of the Court.

This action was instituted to recover on six promissory notes executed to represent installments of the rent of a building in the city of Memphis. The defense relied on is that the building was demised by the landlord for use by defendants as a liquor saloon, in the face of laws in effect in that city prohibiting the sale of intoxicating liquors.

The building was leased to Burke by its owners through a real estate firm, on September 1, 1911, for a three-year term, the contract reciting that Burke as lessee covenanted "to use said building and premises for the purposes of a storehouse." The house had been used as a saloon for about forty years, and was equipped with swinging doors and other marks that would indicate its use to be that of a drinking stand. Burke in April, 1912, sublet, with the written consent of the owner, to Shea and Myers, who indorsed the rental notes. At that time the building contained regular bar fixtures, and in it a business was being run in open violation of the law referred to. Shea and Myers, as indorsers, are sued along with Burke. The notes are those that represent the installments of rent for the last six months of the term. The owners were nonresidents of the city, and all transactions in their behalf were through a local real estate agency. There was knowledge on the part of these agents that a saloon would be conducted in the structure.

The question of the effect of the use of demised prop-- erty for an illegal purpose upon the contract of lease is, upon several of its phases, a vexed one.

The English courts hold to the view that where the intention of the lessee is unlawful, the mere fact that the other party knows of such purpose renders the con- tract illegal and unenforceable. A number of the courts. of this country have followed the English rule, while others adhere to the doctrine that mere knowledge on the part of the lessor of property that the lessee in- tends to make an illegal use of it does not render the contract void so as that the lessee may defeat the col- lection of the rent.

Under the rule of the more recent cases, if, indeed, not the one sustained by the weight of authority in America, mere knowledge on the part of a lessor that the lessee intends to violate the law on or by the use to be made of the property does not make the contract of lease illegal. The reasoning in support of this rule runs as follows: The contract does not take the color of illegality, unless the intent that gave it existence was illegal and mere knowledge is not intention. There are two parties to the contract and the intent of one, the lessee, is not the intent of both, or the mutual or common intent, or the intent of the contract. There must be unity of intention to bring the contract to de- nunciation. The lessor is not the keeper of the con- science of the lessee, nor his policeman. The intention of the lessee at the time the contract is entered into may be changed before the property is put to actual

use, and that use may turn out to be a lawful one.  His purpose is not subject to the control of the lessor; and it is not just to permit his making an inhibited use of the premises to cloud the motive of the opposite party, and thus defeat him in the realization of his rentals. *Ashford* v. *Mace,* 103 Ark., 114, 146 S. W., 474, 39 L. R. A. (N. S.), 1104, Ann. Cas., 1914B, 804; *Harbison* v. *Shirley,* 139 Iowa, 605, 117 N. W., 963, 19 L. R. A. (N. S.), 662; *Anheuser-Busch Brewing Ass'n* v. *Masin,* 44 Minn., 319, 46 N. W., 558, 9 L. R. A., 506, 20 Am. St. Rep., 580, and cases cited in these authorities.

While the particular question, as it relates to lease contracts, has not been passed on by this court in any reported case, the principle underlying the above decisions has been recognized in the analogous cases of sales and loans.

*McGavock* v. *Puryear,* 6 Cold. (46 Tenn.), 34, dealt with a loan of money with knowledge on the part of the bank that the borrower would purchase horses for a Confederate regiment in the war between the States. The court said:

"To guard against misapprehension of the principle upon which the decision in this case is made, we state, succinctly and definitely:  The mere knowledge of the bank of the illegal purpose to which Park and others intended to apply the proceeds of the note, is not, of itself, enough to implicate the bank in the illegality of the transaction, and so affect the note with the taint of illegality.  In order to so implicate the bank and affect the note, it must be shown that the bank made the

loan, with the purpose, on its part, to furnish money to enable the borrower to do the illegal act.

"We repeat, the mere knowledge of the lender of money, of the illegal use that the borrower intends to make of the money, is not enough, of itself, to fix the stain of illegality upon the lender. In order to do so, it must appear that the lender made the loan for the purpose to enable the borrower to do the illegal act."

The cases of *Naff* v. *Crawford*, 1 Heisk. (48 Tenn.), 111, *Tedder* v. *Odom*, 2 Heisk. (49 Tenn.), 68, 5 Am. Rep., 25, *Bond* v. *Perkins*, 4 Heisk. (51 Tenn.), 364, *Jones* v. *Bank*, 9 Heisk. (56 Tenn.), 455, *Puryear* v. *McGavock*, 9 Heisk. (56 Tenn.), 461, and *Henderson* v. *Waggoner*, 2 Lea (70 Tenn.), 133, 31 Am. Rep., 591, announce the same doctrine, and in one or more of these cases the English rule is in terms rejected.

We therefore are of opinion that where a lease of a building is made that does not itself set forth an illegal intent or use and where nothing else appears, the above authorities apply to sustain the lessor in a recovery under the contract.

A clear example of an illegal contract of lease is where the instrument sets out in its face that the premises are to be used for a purpose that is denounced by the law; as in *Heart* v. *East Tenn. Brewing Co.*, 121 Tenn., 69, 113 S. W., 364, 19 L. R. A. (N. S.), 964, 130 Am. St. Rep., 753, where the language of the lease in judgment was regarded as restricting the use of the premises to saloon purposes. That case was so construed and cited in, and followed by, *Griel Bros. Co.*

v. *Mabson,* 179 Ala., 444, 60 South., 876, 43 L. R. A. (N. S.), 664; and see *Hayton* v. *Seattle Brewing, etc., Co.,* 66 Wash., 248, 119 Pac., 739, 37 L. R. A. (N. S.), 432. In such case there is, of course, a common intent manifested.

And where additional to such knowledge there appears an intention on the part of the lessor at the time of the demise that the premises shall be used for an illegal purpose, such as for the prohibited sales of intoxicating liquor, he cannot recover rent. If he participates in the intent, however slightly, or if he does any act in aid of the unlawful purpose, however slight, it suffices to defeat a recovery. The lessor must, however, do or contribute something in furtherance of the transgression.

"The law finds itself in close quarters at this point, and is confronted with danger at either side. On the one hand, it must needs withhold its sanction from contracts entered into for criminal purposes ; and, on the other hand, it ought not to go so far as to offer undue inducement to beneficiaries of contracts to taint them with criminality for the very purpose of avoiding liability thereon after receiving the benefits of performance by the other party, lest the latter evil become greater than the first. While, therefore, it is true that the line of distinction drawn in the authorities above cited is somewhat fine, it is also true that it required a thin blade to divide the 'joints and marrows' of one evil to be checked and another to be avoided." Harbi-

son v. Shirley, 139 Iowa, 605, 117 N. W., 963, 19 L. R. A. (N. S.), 662.

The facts of the instant case, in our opinion, show on the part of the landlord a tainting participation in or contribution to the intention to so use the building. The building had been occupied as a liquor saloon for about forty years. Indeed, it had been so long and regularly used for that purpose that it had taken on the designation of the ''Old Bay Horse''; and it was provided with swinging doors and other outfitting suitable for saloon purposes. Attaching to such a place of business was an element of rental value that may be likened to good will; it was, we may fairly infer from its long-time use a place to which a line of customers were accustomed to resort. When it was offered on the market for rent, through real estate agents, it was held out as peculiarly valuable as a stand for the sale of intoxicating liquors. It would bring a greater return to the landlord for that use than it would for use as a jeweler's shop or a drug store. Its existence, in the condition it was at the date the lease was executed on 1st day of September, 1911, was an inducement to one offering to lease it to use it for the purpose. It was peculiarly adapted to that use, and not equally to another; and, as seen, it had a greater value to both parties when so applied. An owner of property may not in this way demise it, taking the augmented benefits, and be heard to claim that he has not participated in the intention that vitiates. The parties, cannot hood-

Bank of Com. & Trust Co. v. Burke.

wink the law by inserting in the lease contract a provision that the property is to be used as a storehouse.

A "storehouse" is a building in which goods of any kind are kept for sale, and the term is broad enough to include the sale of liquors as goods; and when used in a lease contract does not necessarily negative a use of the building for the dispensing of such liquors, especially where the structure showed peculiar adaption therefor. *Commonwealth* v. *Whalen,* 131 Mass., 419; 7 Words and Phrases, 6672.

If the house be leased for a lawful purpose, the mere noninterference by the landlord with the subsequent illegal traffic of his tenant, after having become aware of it, does not involve him in the tenant's guilt as showing participation. *Crofton* v. *State,* 25 Ohio St., 249; *Koester* v. *State,* 36 Kan., 27, 12 Pac., 339; *Kessler* v. *Pearson,* 126 Ga., 725, 55 S. E., 963, 8 Ann. Cas., 180.

However, acts of the parties to the contract, both before and after the making of the lease, may be proven to show their intent in making the contract. *Egan* v. *Gordon,* 65 Minn., 505, 68 N. W., 103; *Updike* v. *Campbell,* 4 E. D. Smith (N. Y.), 570; *Kessler* v. *Pearson,* supra.

We think there was no error in the decree pronounced by the court of civil appeals holding the rental sums not to be collectible in this action. Writ of *certiorari* denied.