RUNDLE-SPENCE MANUFACTURING COMPANY, Appellant,
vs. JAKOPICHEK and others, Respondents. [Two
cases.]

*February 3—April 29, 1930.*

464

For the appellant there was a brief by *McGarigle & Wetzel*, attorneys, and *Frank T. Boesel* of counsel, all of Milwaukee, and oral argument by *Mr. Donald D. McGarigle* and *Mr. Boesel*.

For the respondent Jakopichek there was a brief by *Reitman & Taylor* of Milwaukee (*I. A. Fish* of Milwaukee, of counsel on motion for a rehearing), and oral argument by *Leo Reitman*.

For the respondents Pitzer, Braun, and Haslacher there was a brief by *L. A. Zavitovsky,* and oral argument by *Brooke Tibbs,* both of Milwaukee.

The following opinion was filed March 4, 1930:

ROSENBERRY, C. J. In addition to the facts found by the court it should be stated that the premises in question in each case had been occupied by the sublessees prior to the arrangements set out in the findings under a sublease from the Waukesha Brewing Company, which had a right to the possession of the premises down to July 1, 1924, under a long-term lease. It should also be said that it appears without dispute that the sublessees had been convicted of offenses against the laws relating to the sale of intoxicating liquors prior to the making of any of the leases in question. All

rents were paid except those which accrued during the period of the padlock, and it was to recover rents for that period that the action was begun by the plaintiff.

Substantially all of the testimony as to the use of the premises for the sale of intoxicating liquors relates to a time at or about the dates of the subletting of the premises by the defendant Jakopichek to the sublessees. A careful search of the record reveals nothing which would support a finding that at the time the plaintiff entered into its lease with the defendant Jakopichek it was contemplated that the premises should be used by any one for the sale of intoxicants unless the fact that the premises had been occupied by persons who had been guilty of such offenses prior to the leasing would sustain it. It was expected that the premises would continue to be used for restaurant and refreshment parlor purposes. Each lease contained the following clause:

"Said lessee to use said premises for refreshment parlors, to be operated in a peaceable and quiet manner, and if premises are used for any other purposes, lease will be subject to cancellation at the option of the lessor."

The question comes down then to what amounts to a participation by the owner of the property in the illegal business carried on upon the premises by the tenant which avoids a lease. The law upon this subject is well stated by the supreme court of the state of Iowa in *Harbison v. Shirley,* 139 Iowa, 605, 117 N. W. 963, 19 L. R. A. n. s. 662 and note. The court said:

"The authorities are not altogether in harmony as to the rule which renders a contract void when it is entered into by one of the parties with the intent to violate the law, and where such intent is known or suspected by the other party. The great weight of authority, however, in our opinion, is that mere knowledge or suspicion on the part of the lessor that the lessee intends to violate the law upon the property will not of itself render a contract void. In order to defeat a recovery for rent by the lessor it must be shown that he participated in some degree, however slight, in the wrongful

purpose and intent that the property should be so used. Mere indifference on his part as to the intended use of the property is not sufficient. If the lessor in any way aids the lessee in his unlawful design, such participation will render the contract void. His relation to the unlawful purpose must be in some degree active, rather than merely passive or indifferent. If he does any act in aid of the unlawful purpose, however slight, it is sufficient participation on his part to defeat recovery. But, until there be some degree of connivance shown, a contract will not be avoided. *Tracy v. Talmage,* 14 N. Y. 162, 67 Am. Dec. 132; *Chamberlin v. Fisher,* 117 Mich. 428, 75 N. W. 931; *Webber v. Donnelly,* 33 Mich. 469; *Anheuser-Busch B. Asso. v. Mason,* 44 Minn. 318, 46 N. W. 558, 9 L. R. A. 506, 20 Am. St. Rep. 580. The law finds itself in close quarters at this point, and is confronted with danger at either side. On the one hand, it must needs withhold its sanction from contracts entered into for criminal purposes; and, on the other hand, it ought not to go so far as to offer undue inducement to beneficiaries of contracts to taint them with criminality for the very purpose of avoiding liability thereon after receiving the benefits of performance by the other party, lest the latter evil become greater than the first. While, therefore, it is true that the line of distinction drawn in the authorities above cited is somewhat fine, it is also true that it required a thin blade to divide the 'joints and marrows' of one evil to be checked and another to be avoided. This court has not heretofore passed directly upon this question. . . .

"Under the evidence in this case, the most that can be said is that the plaintiff feared or suspected that intoxicating liquors might be sold upon the premises."

See, also, note 39 L. R. A. N. s. 1104; 16 Ruling Case Law, p. 573, § 48; 35 Corp. Jur. p. 1166, § 440; 2 Page, Contracts, p. 1958, § 1109.

We are of the opinion that the correct rule of law was laid down by the supreme court of the state of Iowa and we adopt the rule stated by it.

There is no evidence in the record which would sustain a finding that the plaintiff in any way participated in the illegal enterprises of the defendants or any of them. The rent

was fair and reasonable. There is nothing to indicate that the plaintiff shared by way of increased rent in the profits of the illicit sales made by the defendant sublessees. If a finding that the plaintiff participated in any way in the illegal enterprises could be sustained in this case, such a finding would have to be sustained in every case where a landlord had grounds which would support a suspicion that his tenant might engage in an illegal business upon the premises. A landlord cannot be required to act upon the supposition that every restaurant and soft-drink parlor is engaged in the illegal sale of intoxicating liquors as a matter of fact.

The transaction between Jakopichek and his sublessees presents a very different situation. Here the sublessees were required to pay above the rental which Jakopichek had agreed to pay to the plaintiff a large bonus—in the case of Pitzer and Braun $1,200 and in the case of Haslacher $1,700. The rent which Jakopichek agreed to pay the plaintiff had been advanced over previous rentals from $100 to $135 the first year and to $145 the second and third years on the premises occupied by Haslacher, and on the premises occupied by Pitzer and Braun from $75 to $100 a month. The net result of the transaction was that the sublessees had to pay not only the increased rentals but a large bonus in addition. The increased rentals reserved in the leases by the plaintiff to Jakopichek seem to have been justified because after the padlock period had expired the premises formerly occupied by Haslacher were relet for $160 a month. It does not appear what disposition was made of the premises occupied by Pitzer and Braun after the padlock period had expired. All of the testimony as to talk about moonshine and its sale for the purpose of paying the rent is said to have taken place at or about the time of the subleasing by Jakopichek to Pitzer and Braun and Haslacher and the arrangement to pay the rent directly to the plaintiff. The testimony so far as it

attempts to connect the plaintiff with the illegal acts of the sublessees is not of a very substantial character. Without holding that the finding is against the great weight and clear preponderance of the evidence, it is sufficient to say that it does not affect the leases originally entered into between the plaintiff and Jakopichek.

There are many circumstances testified to by the parties which have not been set out which tend to sustain the finding of the court that at the time of the arrangement between Jakopichek and Haslacher and Pitzer and Braun it was contemplated that the premises would be used by the sublessees for illegal purposes. The leases between Jakopichek and his sublessees being illegal because of the participation of Jakopichek, he having received a very large consideration over the normal rental, the holding of the trial court that said subleases are illegal is affirmed, but the evidence is held to be insufficient to sustain a finding that there was any participation by the plaintiff which would avoid the lease between the plaintiff and Jakopichek.

Jakopichek had prior to going into the real-estate business in 1922 been a saloon keeper; he had been convicted of a violation of the prohibition law; he had intervened in the transaction in order to procure the lease from the plaintiff in the first instance, and quite clearly took advantage of the situation so as to compel his sublessees to pay a large amount for continued possession of the premises, which he no doubt contemplated that they would do because of the illicit business which they might transact upon the premises. In no other way could the large amount which they were compelled to pay him above the normal rental be accounted for. The plaintiff did not in any way participate in this transaction except to agree that the rent which was due it by Jakopichek might be paid to it by Jakopichek's sublessees. So far as the plaintiff was concerned, whether the rent was

paid by Jakopichek or some one else, plaintiff received no more than it had contracted for under a valid contract untainted by participation in any illegal transaction.

*By the Court.*—So much of the judgment in each case as denies plaintiff's recovery against the defendant Jakopichek is reversed, and the cause remanded with directions to the trial court to enter judgment in each case for the plaintiff against the defendant Jakopichek for the amount due under the lease. The judgment appealed from is in all other respects affirmed. Plaintiff to recover one bill of costs against the defendant Jakopichek; the defendants Haslacher, Pitzer, and Braun to have one bill of costs against the plaintiff.

Fritz, J., took no part.

A motion for a rehearing was denied, with $25 costs, on April 29, 1930.