HART PUBLICATIONS, INC. v. BENJAMIN B. KAPLAN AND OTHERS.[1]

June 3, 1949.

No. 34,817.

---

[1]Reported in 37 N. W. (2d) 814.

*Robins, Davis & Lyons,* for appellants.

*Thompson, Hessian, Fletcher & McKasy* and *Byron W. McCullagh,* for respondent.

LORING, CHIEF JUSTICE.

This is an action to recover "the agreed price," or reasonable value, of printing for defendants tickets or slips of paper to be used in games of chance. The total bill was alleged to have been $4,165, upon which $800 had been paid. Plaintiff had findings in its favor, and defendants Ida Kaplan and Thelma Geller, who were the only defendants who answered, appeal from an order denying a new trial. Four questions are presented:

(1) Were the answering defendants liable to plaintiff as business associates under M. S. A. c. 333?

(2) Was error committed in the admission in evidence of Dun & Bradstreet's report?

(3) Does the fact that plaintiff, when it accepted the order, knew that the product of its work was to be used in a game of chance preclude a recovery?

(4) If the foregoing questions be answered in favor of plaintiff, did it prove its case as to agreed price of the work done?

Plaintiff is a printing company which did composition, make-up, electrotyping, and presswork on certain printed matter for the Park Square Manufacturing Company, of which it was alleged that defendants Ida Kaplan and Thelma Geller were among the owners. They separately answered plaintiff's complaint denying liability. The trial court made findings for plaintiff and ordered judgment for $3,365 with interest from April 29, 1946. This is an appeal by the answering defendants from the order of the trial court denying their motion for a new trial.

At the trial, it appeared that plaintiff obtained an order to print a carload of paper according to specifications which were to be furnished to plaintiff. As requested from time to time, plaintiff was to produce and deliver tickets or slips of paper to be used in games of chance called "jar deals" and "punch boards." The sales agent who obtained the order was vice president of plaintiff. He was aware that the product was to be used in connection with games of chance.

Among others, defendants Ida Kaplan and Thelma Geller were named as persons interested in the Park Square Manufacturing Company (hereinafter referred to as Park Square) by the terms of a certificate of business name filed in behalf of that company under the provisions of M. S. A. c. 333 in the office of the clerk of the district court of Ramsey county on July 21, 1944. It listed "the full and true individual names of each and every person who is in any way interested in said business under said name, * * *." Plaintiff

had no personal contact with either answering defendant, as an individual, but its officers asserted that they had knowledge, independent of the certificate, that these defendants were part owners of Park Square at the time credit was first extended to it.

There is evidence tending to prove that both Ida Kaplan and Thelma Geller retired from the business in December 1945. In May 1946, Park Square was incorporated to take over all the assets of the previous business, conducted under the same name, and early in 1947 the corporation subsequently filed a petition in bankruptcy. It was then that plaintiff obtained the Dun & Bradstreet report. Defendants now object to its admission in evidence. The record indicates that Ida Kaplan and Thelma Geller, although subpoenaed to testify at the trial of this cause, were not found by the sheriff and did not at any time appear except by counsel. The certificate above referred to was introduced in evidence from the records of the clerk of the district court of Ramsey county. There was no subsequent record of the filing of a change of ownership certificate, as required by § 333.03, in order to relieve the owners named in the certificate filed July 21, 1944, of liability to persons extending credit without actual notice or knowledge of change of ownership. The clerk of the district court testified that there was no such subsequent certificate on file in his office.

The court made findings of fact that the individual defendants, including Thelma Geller and Ida Kaplan, were doing business under a partnership name of Park Square Manufacturing Company; that plaintiff had no notice or knowledge of a later withdrawal of such partners from the partnership; and that on or about June 29, 1945, plaintiff and defendants entered into a contract, upon which part performance was carried out by plaintiff and certain payments made on the purchase price, leaving a balance due and owing to plaintiff of $3,365. The court also found that plaintiff did not participate in any illegal transaction by printing and delivering paper stock, and, as conclusions of law, ordered judgment for plaintiff for $3,365 with six percent interest running from April 29, 1946.

■ Plaintiff made out a "presumptive" case that Ida Kaplan and Thelma Geller were members of the partnership, styled "Park Square Manufacturing Company," by introducing the certificate of ownership under §§ 333.01 and 333.03 and the proof that that certificate had never been amended or superseded.[2] Section 333.03 makes the individuals named in the certificate liable to persons who extend credit to the business without actual notice or knowledge of change of ownership.

Counsel for appellants admitted at the trial that this certificate included defendants in a partnership, but challenged the certificate as hearsay. There was evidence that plaintiff had no actual notice

[2]"333.01. No person or persons shall hereafter carry on or conduct or transact a commercial business in this state under any designation, name, or style, which does not set forth the full individual name of every person interested in such business unless such person or persons shall file in the office of the clerk of the district court of the county or counties in which the person or persons conduct or transact, or intend to conduct or transact, such business, a certificate setting forth the name under which the business is conducted or transacted, or is to be conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the post-office address or addresses of such person or persons. The certificate shall be executed and duly acknowledged by one of the persons conducting, or intending to conduct, the business."

"333.03. On each change in ownership of any business described in section 333.01, a new certificate must be filed with the clerk of court, either by one of the retiring or incoming owners of the business, setting forth the full individual name or names, together with the post-office address or addresses of the new owners thereof. *Until the filing of the new certificate, the person or persons whose names appear as owners upon the certificate heretofore filed shall continue liable to all persons who extend credit to the business,* except only in the case of creditors who have actual notice or knowledge of such change of ownership." (Italics supplied.)

"333.04. The several clerks of the district courts of this state shall keep an alphabetical list of all persons filing certificates provided for in section 333.01, and for the indexing and filing of such certificates they shall receive a fee of 25 cents. A copy of such certificate, duly certified to by the clerk of the district court in whose office the same is filed, shall be *presumptive evidence* in all courts of law in this state of the facts therein contained." (Italics supplied.)

or knowledge of the change of ownership, which was alleged to have taken place in December 1945. There was no evidence to the contrary.

The statute does not require that the persons extending credit to owners of a registered business be, at that time, aware of the existence of such certificate or its filing as a condition of liability of the persons named in the certificate. There is credible testimony in the record that plaintiff received information concerning the membership of Ida Kaplan and Thelma Geller in the business before it extended credit to it. The certificate is presumptive evidence in all courts of law of the facts therein contained. § 333.04. There is evidence tending to prove that plaintiff's first notice or knowledge of withdrawal of Ida Kaplan and Thelma Geller was by receipt of the Dun & Bradstreet report of February 26, 1947, which was long after the completion of the contract upon which plaintiff's claim was founded. The burden of proof was upon defendants to show that plaintiff came within the exception, and they offered no such evidence.

■ Defendants' only assignment of error on the admission of evidence relates to the admission of the special Dun & Bradstreet report of February 26, 1947, which was designated as plaintiff's exhibit G. This report came to plaintiff when the Park Square corporation, defendants' successor, went into bankruptcy. Plaintiff's evidence tended to prove that the receipt of exhibit G was the first information it had of any change from the original ownership of Park Square as disclosed by the certificate filed on July 21, 1944, with the clerk of the district court of Ramsey county, where it conducted its business.

One of the documents included in exhibit G was defendants' exhibit 1, which defendants had offered in evidence as part of the cross-examination of one of plaintiff's witnesses. Exhibit 1 contained a statement of the change in ownership by which the answering defendants disposed of their interest in Park Square. It is the contention of defendants that this change occurred prior to the extension of credit by plaintiff in connection with the cause of action

herein pleaded. Consequently, the contents of exhibit 1 and of exhibit G supported defendants' theory of the case, had such contents been seasonably communicated to plaintiff prior to the extension of credit. At the time these exhibits were offered and subsequently received in evidence, the issue between the parties had been reduced to the question: When was this information communicated to plaintiff? The documents themselves did not disclose the time of their receipt by plaintiff, and all the evidence in the case tends to prove that neither exhibit G nor exhibit 1 came to plaintiff's notice or knowledge until February 1947, long subsequent to the fulfillment of defendants' order by plaintiff. Consequently, the admission of exhibit G was entirely harmless to defendants' case—certainly as harmless as its own exhibit 1, which contained all the evidence favorable to defendants that was included in exhibit G.

■ None of the evidence introduced by defendants in raising their defense of illegality of the contract tended to show that plaintiff in any manner participated in the sale of the tickets to organizations or persons who would use them in a game of chance. The statutes which prohibit lotteries, § 614.01, *et seq.*, are devised to punish persons who actually operate or contrive the lottery rather than those who prepare the materials used in the lottery. Section 614.02, relating to selling tickets and advertising, reads:

"Every person who shall sell, give, or in any way whatever furnish or transfer to or for another a ticket, chance, share, or interest, or any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in, or dependent upon the event of a lottery, to be drawn within or without the state; * * * shall be guilty of misdemeanor."

In this case, there is no evidence of the existence of a pool or scheme of chance for which plaintiff could be considered to have transferred or sold the tickets.

Furthermore, in absence of active participation, the defense of illegality is ordinarily not available to the party who has breached a contract, where the fault and illegality are unilateral on his side

of the transaction.[3] Even if the printing of the tickets was in itself illegal, defendants could not take advantage of this as a defense in absence of *active participation* of plaintiff in the scheme. Here, bare knowledge of the purpose for which the tickets could be used was not enough to raise a valid defense of illegality. Cf. Anheuser-Busch Brg. Assn. v. Mason, 44 Minn. 318, 46 N. W. 558, 9 L. R. A. 506, 20 A. S. R. 580; Kittle v. DeLamater, 4 Neb. 426; Rose v. Mitchell, 6 Colo. 102, 45 Am. R. 520; Main v. Berlin Dry Goods Co. 75 N. H. 511, 77 A. 483; Bickel v. Sheets, 24 Ind. 1; Brunswick & Balke Co. v. Valleau, 50 Iowa 120, 32 Am. R. 119; see, Annotations, 166 A. L. R. 1364 and 53 A. L. R. 1364; Restatement, Contracts, § 602(1). In State v. Powell, 170 Minn. 239, 212 N. W. 169, the court pointed out that lottery tickets are not inherently vicious, like counterfeiting tools, in which there can be no property right.

On the issue of whether plaintiff established an agreed price for the work done, it alleged that the order for 50,000 sheets of the printed matter was to be done at "an agreed price" and reasonable value of $4,165 and that this work was delivered, on which sums totaling $800 had been paid, leaving a balance of $3,365, for which judgment was prayed with interest. The answer was a general denial. Defendants object to the court's finding of the balance due, on the ground that this balance was not reached with defendants Ida Kaplan and Thelma Geller and that the items were not proved to show reasonable value of time and material expended.

There is evidence in the record from which the court below could find that the balance stated was due as an account stated. No question as to the amount of printing done or billed had arisen. The 50,000 sheets were billed April 29, 1946. An objection was made to the price charged on this invoice by a letter under the letterhead of the Park Square Manufacturing Company, the trade name registration of which still listed Ida Kaplan and Thelma Geller as part owners. A letter from the Park Square Manufactur-

[3]Cf. Augir v. Ryan, 63 Minn. 373, 65 N. W. 640; Erb v. Yoerg, 64 Minn. 463, 67 N. W. 355. See, Larx Co. Inc. v. Nicol, 224 Minn. 1, 28 N. W. (2d) 705; 2 Dunnell, Dig. & Supp. § 1887, note 20.

ing Company under date of August 1, 1946, asked for reconsideration of the bill, but no concession was made by plaintiff. November 22, 1946, and December 12, 1946, payments of $500 and $300 respectively were made on the original bill. Statements of balance due, dated December 26, 1946, and March 10, 1947, show the basic bill of $4,165, less the two payments. No objection to this bill was made by defendants or any of them. There was no challenge to any item nor to the basis on which the charge was computed. A further order was given plaintiff by the Park Square Manufacturing Company and accepted in February or March 1947. Under the circumstances shown in this record, the trial court was justified in finding that a balance of $3,365 remained due and owing plaintiff. Cf. Western Newspaper Union v. Segerstrom Piano Mfg. Co. 118 Minn. 230, 136 N. W. 752. In the Segerstrom case, this court held that a complaint which recited that (Paper Book, p. 1) "plaintiff furnished and delivered to defendant at its special instance and request advertising *of the reasonable value and at the agreed price*" (italics supplied) would permit introduction of evidence sustaining proof of a balance due on an account stated.

The order denying defendants' motion for new trial is affirmed.