JOSEPHINE MUSCO *vs.* JOSEPH TORELLO.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

If the consideration of a contract made in Connecticut, or the acts which its performance contemplates, contravene the statutory or fundamental law of this State, our courts will hold it to be void and unenforceable.

A landlord, who leases his premises in this State with knowledge that they are to be used for the sale of spirituous and intoxicating liquors, cannot maintain an action here for the recovery of rent; under such circumstances, the lease is illegal and void, and with each day of its continuance, the law regards the landlord as aiding and abetting the tenant in his unlawful purpose.

In the present action for the recovery of rent, where the evidence raised an issue of fact as to the existence of the lease claimed by the plaintiff, it was error for the trial court to direct a verdict for the defendant; but the error was harmless, since the plaintiff was not entitled to a verdict under any circumstances, in view of the undisputed fact that she knew the premises were to be used unlawfully for the sale of liquor.

Argued January 27th—decided April 3d, 1925.

ACTION to recover rent alleged to be due from the defendant for his use and occupation of the plaintiff's premises, brought to the City Court of New Haven and tried to the jury before *Watrous, J.;* the court directed a verdict for the defendant, and from the judgment rendered thereon the plaintiff appealed. *No error.*

*Alfred E. DeCapua,* for the appellant (plaintiff).

*Franklin Coeller,* for the appellee (defendant).

WHEELER, C. J. The plaintiff offered evidence to prove these facts: She was the owner of premises in New Haven, on the ground floor of which had been a

liquor saloon for thirteen years, with tenements on the floors above. For about four years prior to August, 1923, Michael Torello, uncle of defendant, rented, through plaintiff's husband, he being her agent for this purpose, the premises in which he conducted a liquor saloon. He gave up the possession of the saloon prior to July 16th, 1923. On July 5th, 1923, plaintiff's husband rented the premises, which were then occupied as a liquor saloon by defendant's uncle, to defendant, from July 16th, 1923, on a month to month oral lease at a rental of $40 a month. Plaintiff's husband and plaintiff knew at the time defendant rented the saloon that defendant purposed carrying on in such saloon the business of selling intoxicating liquors. Defendant went into possession of the saloon on July 16th, 1923, and closed it up on August 6th or 7th, 1923, upon order of the public authorities so to do. On August 11th defendant paid plaintiff's husband $40, being the month's rent from July 16th. He continued in the physical possession of the saloon premises until October 5th, 1923, and kept the keys to the saloon until November 18th, 1923.

Defendant offered evidence to prove these facts: He never rented the saloon from plaintiff's husband nor got the key to the saloon from him, but occupied it under his uncle, Michael Torello, from whom he had received the key while working for him in the saloon, and that he closed up the saloon and so notified plaintiff's husband, because of an order so to do signed by the State's Attorney, the Prosecuting Attorney of the Court of Common Pleas, and the City Attorney of New Haven. The court directed a verdict upon the ground that "the use of the premises for those purposes was illegal and contrary to law and that the plaintiff cannot recover rent for the premises so occupied."

Practically the only issue of fact between the parties was as to whether defendant was in fact a tenant of plaintiff under the agreement as claimed by her. The court, in its direction of a verdict, assumed this to be an undisputed fact instead of a controverted one. Since the direction of the verdict for the defendant reached the same conclusion as would have been reached had the jury found that the defendant never became a tenant of plaintiff, it furnished no ground of appeal by plaintiff. The only question on the appeal is that which arose upon the evidence and upon which the court directed the verdict in favor of the defendant, viz.: assuming that plaintiff did rent the premises to the defendant, could plaintiff recover rent for these premises since it was undisputed that plaintiff knew that the use of the premises for a liquor saloon was illegal when the lease was made, and made the lease for the purpose of having the premises conducted as a liquor saloon? Assuming that the lease was made to defendant by plaintiff with knowledge on the part of the plaintiff of the illegal purpose for which the saloon was to be used, it follows as matter of law that a landlord who leases his property in Connecticut knowing that it is to be used for the purpose of carrying on the business of selling spirituous and intoxicating liquors, acts illegally and the contract so made is void. No action can be maintained upon the contract of lease, since the contract is against public policy. When the sale of intoxicating liquors is not prohibited by law, a lease of premises for the purposes of such sale is valid and will support a recovery for the rent unless it was made with the knowledge and purpose of the lessor that it was to be used for the illegal sale of liquors. Where the premises leased were rented with the knowledge and intention on the part of the lessor that they were to be used for a purpose prohibited by law, the

courts have denied the lessor the right of recovery in an action for rent. This ruling has been applied in cases where the lease of premises has been for purposes of prostitution, or the illegal sale of liquor, or gambling or other unlawful uses.

In *Mitchell* v. *Campbell,* 111 Miss. 806, 808, 72 So. 231, in an action to recover rent of property used for the purpose of prostitution, the court said: "The authorities are in accord that, if a landlord knowingly leases his property to be used for the purposes of prostitution, he cannot recover for rents which a tenant has agreed to pay. The whole contract is against public policy, an offense against morality, and absolutely void." In *Berni* v. *Boyer,* 90 Minn. 469, 470, 97 N. W. 121, the court held: "The lease, because for an unlawful purpose, was undoubtedly wholly void, but we are aware of no rule or principle of law which would create a tenancy from month to month. . . . In either case they [the defendants] cannot found a right in law to continue in its violation. They could not be compelled to pay rent." See also *Plath* v. *Kline,* 18 App. Div. 240, 45 N. Y. Supp. 951; *Ralston* v. *Boady,* 20 Ga. 449.

In *Sherman* v. *Wilder,* 106 Mass. 537, 539, in an action to recover rent under a lease, the court ruled: "If the plaintiff gave the lease declared on, knowing that the defendant intended to use the premises described therein for the illegal sale of intoxicating liquor, and to enable the defendant to carry on the business there, and the premises were in fact so used, he cannot recover the rent due upon it, in this action. It was a contract void for illegality." In *Mound* v. *Barker,* 71 Vt. 253, 254, 44 Atl. 346, in an action of debt on a bond given as surety for rent for premises used for the sale of liquor, the court held the action could not be maintained, saying: "Thus, when property is leased with knowledge on the part of the lessor that the lessee in-

tends to use it for an illegal or an immoral purpose and does so use it, the rent therefor cannot be recovered." In *Dunn* v. *Stegemann,* 10 Cal. App. 38, 40, 101 Pac. 25, the court denied a recovery for rent of a liquor saloon, a business prohibited under the local law, upon this ground: "The facts making such business unlawful were well known to the plaintiffs and defendants, and they are chargeable with knowledge of the law. It is well established that no recovery can be had by either party to a contract having for its object the violation of law. The courts refuse to aid either party, not out of regard for his adversary but because of public policy." See also *Goodall* v. *Gerke Brewing Co.,* 56 Ohio St. 257, 46 N. E. 983; *Bank of Com. & Trust Co.* v. *Burke,* 135 Tenn. 19, 26, 185 S. W. 704; Note to *Harbison* v. *Shirley,* 19 L. R. A. (N. S.) 663 (139 Iowa, 605, 117 N. W. 963); Note to *Kessler* v. *Pearson,* 8 Amer. & Eng. Ann. Cas. 181 (126 Ga. 725, 55 S. E. 963); 24 Cyc. 908, 909; 35 Corpus Juris, 1166; 1 Tiffany, Landlord & Tenant, p. 302.

The cases cited by the appellant are as a rule contracts for the sale of goods which were at an end upon the delivery of the goods, and also contracts for the sale of goods made in one jurisdiction, where the sale was valid, to be delivered in another jurisdiction and then used for a purpose illegal there. Mere knowledge of the illegal purpose by the vendor in such cases it has been held would not prevent a recovery by the vendor unless the illegal purpose were made a part of the contract, or the seller does some act to facilitate the carrying out of the illegal purpose. All of the cases which so hold rely upon Lord Mansfield's opinion in *Holman* v. *Johnson,* 1 Cowp. 341, a case in which the plaintiffs sold and delivered tea to defendant at Dunkirk, knowing it was to be smuggled by him into England, and sued to recover the price. The court held the contract

was good where made and since it was complete and the plaintiffs had no concern in smuggling the tea into England, they could recover. The English cases stand upon this ground; in the cases which are in apparent conflict, of which *Lightfoot* v. *Tenant,* 1 Bos. & Pul. 551, is an example, it appeared, and was the ground of the decisions, that the unlawful purpose entered into and formed a part of the contract of sale or loan. The leading case in this country upon this subject is *Tracy* v. *Talmage,* 14 N. Y. 162; it was there held that mere knowledge by the vendor that the purchaser intends to make illegal use of the property sold will not defeat a recovery for the price. The court is careful to state, on page 179: "It has long been settled that contracts founded upon an illegal consideration, or which contemplate the performance of that which is either *malum in se,* or prohibited by some positive statute, are void." In the opinion on the reargument it is said, on page 214: "If the illegal design does not enter at all into the negotiation of the contract, if it forms no part of the inducement to the transaction, will the knowledge or belief of the lender (and knowledge and belief for the purposes of this question are the same) prevent him from recovering the money when it is due? Such a doctrine, I apprehend, would be highly inconvenient in a commercial community like this." And then, on page 215, the court adds: "Where the design is to violate the fundamental laws of society, a positive duty of intervention may arise to prevent the perpetration of the crime. To such cases, the rule which we laid down ought not to be applied." Cases of contracts for the sale of goods made in one jurisdiction to be delivered in another, supported by the application of these principles, are: *Green* v. *Collins,* 3 Clifford (U. S. C. C.) 494, 501; *Gaylord* v. *Soragen,* 32 Vt. 110;

*Dater* v. *Earl,* 69 Mass. (3 Gray) 482; *Hill* v. *Spear,* 50 N. H. 253; *Aiken* v. *Blaisdell,* 41 Vt. 655, 669.

The same reasons which would support a contract made in another jurisdiction and good there could not be availed of in support of the same contract when made in a State in which it is sought to enforce it and where the purposes of the contract, whether expressed in it or expressed *aliunde* are prohibited by the law of that jurisdiction. If the contract expressly stated its purpose to be the sale of liquor and such sale was prohibited by State or national law, it would be a strange perversion of judicial action to uphold the contract made in violation of the law of its own jurisdiction. The consideration of the contract is illegal, it contemplates the doing of that which is prohibited by statute and all such contracts are void. In the case before us the contract of lease contemplates the violation of a provision of the United States Constitution. Public policy of the highest concern forbids the enforcement of such a contract, a rule adopted without reference to the benefit to the plaintiff but solely in the interest of the public welfare and of the preservation of the Federal Constitution upon which our entire social fabric rests. The rule we adopt may be supported upon the narrower ground that this contract of lease not only purposed a violation of a prohibitive statute, but with each day's continuance of the use of this saloon, known by plaintiff to be for such unlawful purpose, the plaintiff aided and abetted the defendant in this purpose. The great weight of authority supports the conclusion we reach, while reason and public policy sustain it.

The court should have charged the jury that if they found the defendant made the contract of lease as claimed by the plaintiff, and with the knowledge on the part of the plaintiff that the premises leased were

to be used for the sale of intoxicating liquor, the contract was void and the verdict must be for the defendant.   In directing a verdict the court took from the jury the question of fact as to whether plaintiff did lease these premises to defendant.   If the jury had found in accordance with plaintiff's claim in this particular and had found the facts as to the uses and purposes of these premises which the plaintiff claimed and which were in truth undisputed, they must under proper instruction have rendered their verdict in favor of the defendant.   Under these circumstances the error of the court was harmless; the direction of the verdict reached a right result and the only result which could have been legally reached upon the evidence.

There is no error.

In this opinion the other judges concurred.