MABEL L. TATOR ET ALS. *v.* D. HARVEY VALDEN, EXECUTOR (ESTATE OF MARY E. HOYT).

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued February 2d—decided March 2d, 1938.

*Clifford B. Wilson,* for the appellants (plaintiffs).

*Joseph H. Donnelly* and *J. Moss Ives,* for the appellee (defendant).

BROWN, J. The complaint in this action alleges these material facts: The defendant's testatrix was the widow of Ebenezer A. Hoyt who died in 1923 a resident of Ridgefield, owning a substantial estate of real and personal property and leaving two wills, one executed in 1886 devising all his property to her and the other in 1912, the only alleged provision of which revoked the 1886 will. Shortly after Ebenezer's death, his brother Charles learned the contents of the two wills and threatened to protest probating of the 1912 will as a distribution of Ebenezer's property unfair to his blood relatives. To prevent this threatened contest, the widow "agreed" with Charles, the plaintiffs Mabel L. Tator and E. Earle Hoyt, surviving children of Ebenezer's other brother who had predeceased him, and the other legatees under the second will, "that if she . . . were permitted to have and enjoy the use for her own life of all the estate . . . which her husband had left, said second will might be destroyed and not offered for probate and that under the first will, which it was agreed might be probated, the said Mary E. Hoyt would take only a use for the term of her natural life of the property . . . remaining after the payment of his debts and expenses of administration, and that she would upon her death give, devise and turn over all such property so received in equal portions, one-half to the said Charles F. Hoyt or his heirs, and the other one-half to the heirs of his said

deceased brother, . . . Mabel L. Tator and E. Earle Hoyt, or their heirs." The plaintiffs Harry Hoyt, Walter Hoyt and Margaret Hoyt Rich are the only children of Charles, now deceased. Solely in reliance on this agreement, Charles and the plaintiffs Mabel and Earle "permitted said second will to be destroyed so that it was never offered for probate, and permitted said first will to be admitted to probate without opposition." The agreement was in writing but has not been found. On June 12th, 1936, the testatrix died leaving a will naming the defendant executor and he has duly qualified. The testatrix neither during life nor by will turned over to any of the plaintiffs any part of her husband's estate received under the agreement. The plaintiffs' claim, duly presented to the executor, was disallowed in full.

It should be noted that it is not alleged in the complaint that the will of 1912 was in any respect invalid. Nor are we here concerned with agreements made by the parties for the settlement of a controversy where there is a bona fide dispute as to the validity of a will which has been presented to the Court of Probate, nor with agreements made between devisees, legatees and distributees as to the disposition of the property of a deceased person after administration has been taken out upon his estate.

The defendant's demurrer to the complaint on the ground that "the consideration, the purpose and design of the promise upon which, and through which, the plaintiffs seek recovery is the destruction, suppression and failure to probate a valid and existing will, and the substitution in a duly constituted Court of Probate of another will which has been revoked, all of which is fraudulent, illegal and contrary to public policy and contrary to the statutes of Connecticut, and no action which requires establishing such a

promise is enforceable," was sustained by the court. Whether this ruling was correct is the sole question upon this appeal. The fundamental inquiry is whether this contract is so contrary to the law and public policy of this State that the courts will not enforce it.

By its terms the parties agreed expressly to the doing of four things, performance of all of which was essential to its execution and the accomplishment of their common purpose. These were: (1) The suppression by withholding from probate and the destruction of the last will; (2) the substitution in probate of the revoked earlier will; (3) the enjoyment by the testatrix of a life estate under the fee thereby acquired; and (4) her gift or devise of the remainder of this fee to the plaintiffs. Both the suppression of the last will and the substitution of the revoked earlier will were indispensable to the plaintiffs' receipt of the remainder contracted for. The agreement of the testatrix to both of these acts and to give the remainder to the plaintiffs was the consideration for their promise to permit her to enjoy the use for her life, and it was the design and purpose of all the parties to the contract that both acts should be carried out thereunder. Performance of the contract requiring these acts, upon this consideration, and with this purpose, in addition to the obvious fraud upon the court and the consequent illegality per se of proving the revoked will, involved a violation both of a statute and of the established public policy of this State.

Section 4948 of the General Statutes, Revision of 1918, now § 4882 of the 1930 Revision, provides that anyone having possession of a will shall forthwith, upon learning of the testator's death deliver it to the executor or to the judge or a clerk of the Court of Probate, with a penalty of fine, imprisonment, or both

for neglect so to do for thirty days. Section 4953 of the 1918 Revision, now § 4886, provides that every executor knowing of his appointment shall, within thirty days after the testator's death, exhibit the will to the court for probate with a penalty of like nature for neglect so to do. The suppression contracted for of the 1912 will was in direct violation of § 4882. Together these statutes give a clear expression of the legislative intent that the will of every person shall be offered for probate. They evince a clear recognition and declaration by it that there is in this State a public policy involved in the establishment of every legally executed last will.

This is a policy of ancient origin. The compilation of the earliest laws and orders of the General Court provided: "that after the death . . . of any person possessed of any estate, bee it more or less, and whoe maketh a will in writing, or by word of mouth, those . . . appointed to order the affaires of the towne, . . . shall within one month after the same, at furthest," take a written inventory and also "take a copy of the said will . . . and enter it into a booke, or keepe the coppy in safe custody," and also make a record of the testator's children and legatees, and further they "are to see every such will and inventory, to bee exhibited into the publique courte, within one quarter of a yeare, where the same is to bee registered," and they "shall doe their indeavors in seeing that the estate of the testator bee not wasted nor spoiled, but improved for the best advantage of the children or legatees of the testator, according to the minde of the testator. . . ." Code of 1650 of the General Court of Connecticut (1825 Edition) p. 88. This court, recognizing the pertinent statutory provisions and the public policy evinced by them, has said: "It is also the duty of the executor named in a will to present it for

probate and endeavor to procure its admission. . . ." *Avery's Appeal,* 117 Conn. 201, 203, 167 Atl. 544. And again, in referring to a joint will providing for delay of probate until the death of the survivor: "Such a direction was plainly contrary to the declared policy of our law, which makes careful provision that every will shall be propounded for probate as soon as may be after the testator's decease." *State Bank* v. *Bliss,* 67 Conn. 317, 320, 35 Atl. 255. In such a case as this there is a very cogent reason which supports the public policy of the State. If, after a will is destroyed in accordance with such an agreement as the one before us, it should appear that for any reason the agreement is invalid, or that all parties in interest did not enter into it, the right of those entitled under the will would be seriously jeopardized if not lost. Such a result is one which should not be made possible by our enforcing an agreement which might bring it about.

"It is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract, but if both parties are *in pari delicto,* the law will leave them where it finds them. *McMullen* v. *Hoffman,* 174 U. S. 639, 654, 19 Sup. Ct. 839, 845." *Vaszauskas* v. *Vaszauskas,* 115 Conn. 418, 423, 161 Atl. 856. While § 4948 as worded imposes the positive duty of a delivery of the will, for the obvious purpose of insuring its probate, but contains no express prohibition against suppressing it, such an act clearly constitutes a violation of the stat-

ute to which its penalty is applicable. This being true, the failure of the statute to provide that an agreement so to do is void, does not render the above principle inapplicable. This court has further said that " 'every contract made for or about any matter or thing which is prohibited and made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty on the offender; because a penalty implies a prohibition, though there are no prohibitory words in the statute. *Bartlett* v. *Vinor,* Carthew, 252.' " *Funk* v. *Gallivan,* 49 Conn. 124, 128.

As was pointed out in *Sagal* v. *Fylar,* 89 Conn. 293, 295, 93 Atl. 1027, whether or not this rule, thus broadly stated, may be subject to any limitations, where the undertaking contracted for is itself forbidden by a statute making clear the Legislature's intention to prohibit that which the parties are seeking to accomplish, it squarely applies. It has been so invoked in the following cases since the *Gallivan* case: *Wilcox Mfg. Co.* v. *Brazos,* 74 Conn. 208, 212, 50 Atl. 722; *Connecticut Breweries Co.* v. *Murphy,* 81 Conn. 145, 151, 70 Atl. 450; *Musco* v. *Torello,* 102 Conn. 346, 350, 128 Atl. 645; *DiBiase* v. *Garnsey,* 103 Conn. 21, 27, 130 Atl. 81; *Westville & Hamden Loan Co.* v. *Pasqual,* 109 Conn. 110, 116, 145 Atl. 758; and *Nicotera Loan Corp.* v. *Gallagher,* 115 Conn. 102, 107, 160 Atl. 426. *Finn* v. *Donahue,* 35 Conn. 216, was an earlier case resting upon the same principle. *Musco* v. *Torello,* supra, 350, contains this terse statement of the rule: ". . . no recovery can be had by either party to a contract having for its object the violation of law," and the criterion is stated in the *Sagal* case, at page 296, to be, when the contract is one " 'for or about any matter or thing' " which is prohibited or made unlawful. The application of this test to the con-

tract here, in the light of the analysis already made of its provisions revealing as they do an inherent purpose to violate the law, determines conclusively that it is a void agreement which the court will not enforce. To recover upon it here, as was said in *DiBiase* v. *Garnsey,* supra, 27, the plaintiffs must rely upon the very transaction made illegal by law. In holding this contract void, we reach a result in accord with a public policy which has persisted in this State since colonial times.

The plaintiffs' brief cites numerous authorities in support of their principal contention that an agreement to dispense with the probate of a will, in which all the legatees and devisees have joined and where no fraudulent purpose is involved, is valid. A number of these cases are referred to in 28 R. C. L., p. 357, § 359, and 68 C. J., p. 908, § 642. Aside from any other differing facts which may render some of the cases relied upon distinguishable from this case, all of them are distinguishable, in so far as appears, in that no statutes of the nature of those here in force applied. In the only jurisdiction with statutes clearly indicative of a public policy similar to that of Connecticut, where to our knowledge the question has been decided, the court has repeatedly held such agreements invalid. *Will of Dardis,* 135 Wis. 457, 115 N. W. 332; *Will of Rice,* 150 Wis. 401, 446, 136 N. W. 956; *Schoenwetter* v. *Schoenwetter,* 164 Wis. 131, 135, 159 N. W. 737. The other contentions of the plaintiffs require but brief mention.

The claim that a fraudulent intent to suppress the will is essential to a violation of § 4948 is sufficiently refuted by the fact that while the word "fraudulently" does appear in the immediately preceding section, 4947, which provides a penalty for the destruction or concealment of a will, it is omitted from § 4948. The

analysis of the contract already made, reveals that the plaintiffs' claims that its illegal part is so separable that that provision can be eliminated and the contract enforced without it, that it should be enforced because the plaintiffs were not in equal guilt with the testatrix, and that the complaint sufficiently alleges a complete cause of action independently of any illegal feature of the arrangement, are all without merit. The answer to the final claim that failure to enforce the testatrix's agreement to turn over this property to the plaintiffs will work a fraud upon them, is found in the purpose and reason upon which the rule precluding recovery rests. Its purpose is to frustrate the object of the transaction and to take away the temptation to engage in contracts contra bonos mores or violating the policy of the law, by refusing aid to either party. 6 R. C. L., p. 829, § 220. " 'The courts refuse to aid either party, not out of regard for his adversary but because of public policy.' " *Musco* v. *Torello,* supra, 350. "In such cases the defense of illegality prevails, not as a protection to the defendant, but as a disability in the plaintiff." *Funk* v. *Gallivan,* supra, 129. The court properly sustained the defendant's demurrer to the complaint.

There is no error.

In this opinion the other judges concurred.