LISBETH S. LEVINE ET AL. v. THE RANDOLPH CORPORATION ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued November 7, 1962—decided January 15, 1963

*Leo Parskey,* for the appellants (defendants).

*George Cutler,* with whom were *I. Oscar Levine* and, on the brief, *Theodore B. Epstein,* for the appellees (plaintiffs).

KING, J. The Randolph Corporation, a defendant and the only corporate party to this action, was organized in 1931 to deal in real estate in Hartford. It has issued, in total, ten shares of capital stock, each having a par value of $100. Its original board of directors consisted of Maurice W. Shulman, Samuel B. Wilkes and Beatrice Shulman. The defendants indicate in their brief that both Wilkes and Beatrice Shulman had at some time been replaced. All of the shares are presently held by six brothers and sisters of the Shulman family; they constitute two opposing factions and are the individual plaintiffs and defendants in this case. The plaintiffs Lisbeth S. Levine and Beatrice Shulman own one share of stock each, and the third plaintiff, Albert H. Shulman, owns two shares. The defendants Joseph L. Shulman and Sophie S. Walsh own one share of stock each, and the defendant Maurice W. Shulman owns two shares. In addition, the defendants Maurice and Joseph Shulman jointly own one share of stock. Certificate No. 21, which gives rise to much of the present controversy, is dated June 1, 1937, and reads on its face as follows: "Beatrice

Shulman is the owner of 2 parts of this certificate, Sophie Shulman is the owner of 2 parts of this certificate, Lisbeth Kamerman is the owner of 2 parts of this certificate, Albert Shulman is the owner of 4 parts of this certificate, making a total of one shares [sic] of the capital stock of The Randolph Corporation." All parties treat certificate No. 21 as evidencing one share only. While the names of two of the named female owners of certificate No. 21 do not correspond to the names of any of the owners of the other shares, it is apparent that these two owners are now Sophie S. Walsh and Lisbeth S. Levine. The plaintiffs' faction, therefore, owns four whole shares and eight-tenths of certificate No. 21, and the defendants' faction owns five whole shares and two-tenths of certificate No. 21.

On July 20, 1961, the three individual defendants, purporting to act as the board of directors of the corporation, voted to issue additional shares of stock, each shareholder to be given the right to subscribe at $100 per share for ten shares of the additional stock for every share of stock owned by him. The offer, which was to expire on August 3, 1961, also provided that "[o]wners of a fractional interest in a jointly owned share of . . . outstanding capital stock shall have the right to subscribe at the subscription price of one hundred dollars per share for additional shares of capital stock at the rate of one additional share for each one-tenth interest which such owner has in each such share of capital stock." The value of each present share of the corporation is greatly in excess of $100 a share. No dividends have ever been paid by the corporation, nor have there been any sales of its stock. If the proposed plan were carried out according to its

stated terms and all rights to subscribe were fully utilized, the plaintiffs' faction would hold fifty-two shares and the defendants' faction fifty-seven shares, and the share represented by certificate No. 21 would remain as at present.

On receipt of the notice of the proposed stock issue, the plaintiffs brought this suit against the corporation, originally the only defendant, alleging, in substance, that the three persons who later became the individual defendants had wrongfully assumed control of the corporation and had illegally elected themselves as the sole officers and members of the board of directors; that the proposed offer of additional stock would be of no benefit or value to the corporation and was intended for the personal gain of those three persons; and that authorization of the offer had not been voted by duly elected directors. A temporary and permanent injunction restraining the corporation and its directors and officers from proceeding with the stock offer was asked. After a hearing, a temporary injunction was granted on August 7, 1961, forbidding the issuance of the additional stock.

At some undisclosed time, the owners of certificate No. 21 had executed the following agreement and filed a copy of it with the corporation: "We hereby appoint Beatrice Shulman to hold Randolph Corporation stock certificate No. 21 for one (1) share which is owned jointly by . . . [the four named owners]. All rights which accrue to this certificate are to be exercised independently by each person above mentioned in the proportion he or she owns therein as though added to any other stock owned solely in his or her name." The defendant Sophie S. Walsh, under date of August 7, 1961, gave notice to the corporation that she was the

owner of a one-fifth interest in certificate No. 21, that her coowners had no authority to vote her interest and that she reserved to herself the exclusive voting rights with respect to it. On August 10, 1961, the plaintiffs gave written notice to the corporation that in all future shareholders' meetings certificate No. 21 would be voted in accordance with General Statutes § 33-311 and that all previous instructions were revoked.

At a meeting on August 18, 1961, the stockholders were declared to have voted, five to four, to ratify and approve the action of the board of directors with respect to the issue of additional stock and, by a similar vote, to have elected the individual defendants as directors. On each question, the plaintiffs voted their fractional interests in certificate No. 21 in the negative, and the defendant Sophie S. Walsh, by proxy, voted her fractional interest in that certificate in the affirmative. The individual defendants, acting as the board of directors, had declared that certificate No. 21 "was ineligible to be voted" at the meeting because the holders of the certificate were not unanimous. In fact, no vote on that share was counted.

Thereafter, in this suit, the individual defendants were added as parties defendant and the complaint was amended and supplemented to include allegations that certificate No. 21 was disenfranchised in violation of § 33-311 of the General Statutes and that the individual defendants were not legally elected or chosen as directors. Additional relief was sought in the form of a judgment determining the validity of the election or appointment of the individual defendants as directors and officers, both prior to and on August 18, 1961. Injunctive relief was also sought to restrain the individual

defendants from acting as directors and officers.

The court below concluded that the voting of certificate No. 21 at the August 18 meeting was governed by § 33-311a (f) of the General Statutes,[1] that a majority of the holders in interest in that certificate did vote in the negative at the meeting, and that consequently the vote should have been, in each instance, five to five. The court further concluded that the proposed stock issue was therefore not legally ratified by the stockholders and that the individual defendants were not legally elected as directors. The court also concluded that there was not sufficient evidence for it to determine who were the legal officers and directors, if indeed there were any; that the proposed stock issue was not designed to serve any corporate need but was merely a device for "freezing" or "squeezing" out the plaintiffs; and that under the circumstances injunctive relief was proper. From the judgment rendered for the plaintiffs, the defendants took this appeal.

Certificate No. 21 was jointly held by, and in the names of, the four owners. Except as otherwise provided by statute, jointly owned stock can be voted only jointly. If one of the joint owners of a stock certificate objects, the stock cannot be voted. *People ex rel. Courtney* v. *Botts*, 376 Ill. 476, 482, 34 N.E.2d 403; note, 134 A.L.R. 989; 5 Fletcher, Corporations (Rev. 1952) § 2038. In No. 618 of the 1959 Public Acts, the General Assembly rewrote the corporation law. Section 30 (d) of that act,

---

[1] The applicable statute was § 30 (d) of No. 618 of the 1959 Public Acts (§ 33-311 [d] of the General Statutes), since repealed, but the technical error in applying the later statute was immaterial, because the only difference between § 33-311 (d) and § 33-311a (f), which superseded it as of October 1, 1961, was the substitution of the word "securities" for the word "shares." This change had no bearing on the present controversy.

which became General Statutes § 33-311 (d), effective January 1, 1961, made the following provision as to the voting of jointly owned shares of stock: "If shares stand of record in the names of two or more persons, whether . . . joint tenants, tenants in common . . . or otherwise, . . . unless the secretary of the corporation is given written notice to the contrary and is furnished with a copy of the instrument . . . creating the relationship wherein it is so provided [i.e., to the contrary], their acts with respect to voting shall have the following effect: . . . (2) if more than one vote, the act of the majority [in interest] so voting binds all . . . ." Section 33-311 (d) was in effect on August 18, 1961, the date of the stockholders' meeting in this case. The section altered the preexisting, common-law unanimity rule by providing that a majority in interest of the joint owners of a share of stock could determine the casting of the vote of that share.

On three grounds the defendants claim that § 33-311 (d) (2) was inapplicable. The first ground is that the agreement of the joint owners of certificate No. 21 provided "to the contrary" within the meaning of the section. A right which attached to certificate No. 21 was the right to vote it. General Statutes § 33-324; *Kresel* v. *Goldberg*, 111 Conn. 475, 478, 150 A. 693. By its terms, the agreement did not purport to alter the character or extent of the fractional interests of the owners of the share but attempted to change the manner in which they should be voted. In the latter regard, the agreement can only be interpreted as an attempt to allow fractional voting. Section 33-346 (a) of the General Statutes provides that "[a] corporation may not issue fractional shares or fractional interests in its shares." A prohibition against the

issuance of certificates for fractions of shares has been a part of our corporation law since 1901. Public Acts 1901, c. 157, § 18; Rev. 1902, § 3371; Public Acts 1903, c. 194, § 17; Rev. 1918, § 3436; Rev. 1930, § 3417; Rev. 1949, § 5174; Cum. Sup. 1955, § 2576d; General Statutes § 33-55 (repealed by Public Acts 1959, No. 618, § 137); General Statutes § 33-346 (a); see *Stamford Trust Co.* v. *Yale & Towne Mfg. Co.,* 83 Conn. 43, 51, 75 A. 90. The retention of this prohibition was advocated on page 30 of the "Study of Corporation Laws of the State of Connecticut" issued by the legislative council in 1958. If a corporation cannot issue fractional shares, then obviously stockholders cannot, without express statutory authority,[2] divide the voting privileges they have by reason of a given certificate so as to cast fractional votes. *Commonwealth ex rel. Cartwright* v. *Cartwright,* 350 Pa. 638, 646, 40 A.2d 30; note, 155 A.L.R. 1095. The prohibition against the issuance of fractional shares would be circumvented if stockholders were allowed to vote in such a manner, and insofar as the agreement concerning certificate No. 21 attempted to authorize fractional voting, it was invalid.

The defendants' second ground for their claim that § 33-311 (d) (2) did not apply is that the agreement "formed the basis on which the 'tenth' share

----

[2] Section 33-311 (d) (3) of the General Statutes (now § 33-311a [f] [3]) provided that "if more than one vote, but the vote is evenly split . . . , each faction is entitled to vote the shares in question proportionally." Thus, in the case of one or more jointly owned shares, the statute seems to authorize fractional voting if there is a deadlock among the joint owners. If this construction of the statute is correct, it would merely constitute a single statutory exception to the general prohibition against the casting of fractional votes. Since the interests in certificate No. 21 of the two factions in the present case were not evenly divided, the defendants take no benefit from the statutory exception, even if we assume its existence.

was issued" and thus in any event was and is binding on the parties. The short answer is that there is nothing in the record to show that the agreement was in existence when certificate No. 21 was issued, nor was it so claimed in the court below. Furthermore, as already pointed out, the agreement by its very terms was an attempt to contract in contravention of the law—as it was both prior and subsequent to the effective date of § 33-311 (d)—and consequently was invalid. *Bator* v. *United Sausage Co.*, 138 Conn. 18, 22, 81 A.2d 442; *Beit* v. *Beit*, 135 Conn. 195, 198, 63 A.2d 161; *Musco* v. *Torello*, 102 Conn. 346, 348, 128 A. 645.

The defendants' third ground is that § 33-311 (d) did not apply to a single share but only to two or more shares. This claim is based on the use of the plural "shares" in the statute. Section 1-1 of the General Statutes provides, however, that "words importing the plural number may include the singular," and there is no rational ground for restricting the operation of the statute to jointly owned stock consisting of two or more shares.

The defendants also made a claim at the trial that if § 33-311 (d) (2) were held to be applicable despite the existence of the "voting agreement," there would be an unconstitutional impairment of the obligations of a contract. Since the agreement authorizing fractional voting was ineffective, being from its inception in contravention of the law, this claim is without merit. Furthermore, the claim was not briefed and must be deemed to have been waived. *Yale University* v. *Benneson*, 147 Conn. 254, 255, 159 A.2d 169.

It follows that certificate No. 21 should not have been disenfranchised at the August 18 meeting. The majority in interest of the owners of the certificate

determined the way it should be voted, and the vote on each of the questions presented at the meeting should have been five to five. The trial court was correct in its conclusion that the individual defendants were not legally elected as directors at the August 18 meeting. There is no finding that any attempt was made to elect or appoint any officers at that meeting (see General Statutes § 33-319), nor was any claim made to that effect.

The complaint as amended requested, apparently under § 33-315 (a) of the General Statutes, a determination of the rights of the defendants to hold office as directors or officers of the corporation. The procedure authorized by § 33-315 (a) is in the nature of a declaratory judgment action to determine the validity of the appointment or election of any officer or director of a corporation. The defendants attack the court's conclusion that it was not possible to determine who were the legally elected directors of the corporation, and its refusal to find, as admitted or undisputed facts, certain paragraphs of the draft finding stating that at the annual stockholders' meetings in 1958, 1959, and 1960 the three individual defendants were elected as directors of the corporation. The minute book of the corporation does not indicate that any directors were elected at any of those stockholders' meetings, and the defendants have failed to point out in their brief any part of the appendix, pleadings or exhibits properly before us which discloses that the plaintiffs admitted that the facts sought to be added were true or conceded them to be undisputed. That the facts sought to be added were testified to by the defendant Joseph L. Shulman and were not directly contradicted by any witness was wholly insufficient. These additions to the finding cannot be made.

Practice Book § 397 (a); *Shakro* v. *Haddad,* 149 Conn. 160, 162, 177 A.2d 221; *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 293, 141 A.2d 634.

The defendants further point out that the finding of the court that Maurice Shulman was originally elected as a director conflicts with the statement made in the memorandum of decision that it did not appear that anyone was ever elected as a director. In such a case, the finding controls. Maltbie, Conn. App. Proc. §§ 152, 165. The defendants correctly claim that in the absence of any showing to the contrary Maurice Shulman, if once duly elected a director, would hold over as a director until another had been duly elected in his stead. General Statutes § 33-314 (e); *New York, B. & E. Ry. Co.* v. *Motil,* 81 Conn. 466, 473, 71 A. 563. Since this claim was not made at the trial, we should not consider it. Practice Book §§ 389, 391, 409; *Osuch* v. *Osuch,* 146 Conn. 90, 92, 148 A.2d 138; Maltbie, op. cit. § 142. We point out, however, that even if the court had held Maurice Shulman to be a director under the holdover rule, the defendants' position would not be benefited, since a minimum of three directors is required by statute. General Statutes § 33-314 (a). The defendants suggest that the reason the court made no finding that all three individual defendants were elected as directors in 1958, 1959, or 1960 was that the minute book failed to disclose the information and not that the court disbelieved the oral evidence of the individual defendants. The finding gives no support to this claim. Quite obviously, the court failed to credit the oral evidence, especially when the minute book in nowise supported it. See *Miller* v. *Bellamore Armored Car & Equipment Co.,* 86 Conn. 548, 550, 86 A. 13. There was no harm-

ful error in the conclusion of the court that it was not possible to determine who were the legally elected directors.

The judgment enjoined the issuance of additional shares of stock as proposed in the offer to stockholders of July 20, 1961. Whether the defendants were or were not duly elected directors on that date could have no effect on the validity of the portion of the judgment granting this injunctive relief. If they were not duly elected directors, the proposed issuance of stock was not authorized by the directors as then required by subsection (a) of § 33-344 of the General Statutes.[3] If they were duly elected directors, the issuance of any stock to them was not approved by the stockholders as then required by subsection (b) of § 33-344. In either event, the court properly enjoined, as illegal, the proposed issuance of stock. Equity, in a proper case such as this, will enjoin the illegal issuance of corporate stock. 11 Fletcher, Corporations (Perm. Ed.) § 5176; see also *Hubbard* v. *Caserta*, 108 Conn. 567, 568, 571, 144 A. 39.

There is no error.

In this opinion the other judges concurred.

[3] The defendants in their claims of law made in the trial court and in their argument before us have treated the proposed stock issue as coming within the purview of § 33-344 of the General Statutes. We therefore assume, without deciding, that § 33-344 applies to a stock issue of the type proposed. We point out, however, that the version of the statute which controls is the one in force on July 20, 1961, when the defendants, purporting to act as the board of directors, voted to issue the shares, and on August 18, 1961, when the stockholders' meeting on the approval of the proposed stock issue was held. The statute was altered in two significant particulars by §§ 47 and 48 of Public Acts 1961, No. 327, effective October 1, 1961. It is the 1961 version which now appears as § 33-344 in the revised volume 6 (1961) of the General Statutes.