[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By an amended appeal dated March 14, 1990, the plaintiff is appealing from an Assessment of Damages (the Assessment) that the defendant filed on November 16, 1989. The Assessment assessed damages for (a) a portion (.027 of an acre) of the plaintiff's land that the defendant is taking for highway improvement purposes CT Page 1782 at the intersection of the north line of Union Street with the west line of West Street in the Rockville section of Vernon; and (b) certain rights (the Rights) that the defendant is taking in an adjoining .006 of an acre of the remaining land of the plaintiff. The Rights empower the defendant to grade the adjoining portion, to construct an island and driveway on it, and to install curbing. The Rights, according to the Assessment, are to terminate upon the completion of the work referred to in the Rights. In the Assessment, the defendant determined the amount of compensation to be paid to the plaintiff to be $22,000, and the plaintiff has received that amount. In his appeal, the plaintiff alleges that compensation of $22,000 is inadequate. The appeal has been referred to me, as a state trial referee, for a hearing and judgment.
In the course of the hearing, the court heard testimony from the plaintiff, from the zoning enforcement officer of Vernon, and heard testimony and received a report from an appraiser for the plaintiff and from an appraiser for the defendant. The court also viewed the plaintiff's land and the vicinity of that land. The court also had the benefit of briefs submitted by the parties concerning claims by the defendant that the appraiser for the plaintiff was not a licensed appraiser as of the day of his appraisal report, May 4, 1990; that because he was not a licensed appraiser as of that day, he is barred by statute from appearing as a witness-appraiser; that the court should not have permitted him to testify as an appraiser; and that therefore, the court cannot properly consider his testimony or report, nor award any appraiser's fee for his services as an appraiser for the plaintiff, even if that award would otherwise be authorized by statute.
 I
The defendant's claim concerning the disqualification of the appraiser for the plaintiff is based upon the provisions of Conn. Gen. Stat. sec.20-329. Subsection (a) of that statute provides, in relevant part, "The provisions of this chapter concerning the licensure of real estate brokers and real estate salesmen shall not apply . . . to witnesses in court as to the values of real estate." Subsection (b) of that statute provides, in relevant part, "The provisions of this chapter concerning the licensure of real estate appraisers . . . shall not apply to [certain federal, state and municipal employees; or licensed real estate brokers or salesmen who estimate value for listing purposes; or to trainees under supervision of a real estate appraiser]. Subsection (b) does not provide, however, for an exemption from real-estate-appraiser licensing requirements for "witnesses in court as to the values of real estate." The defendant contends that the omission in subsection (b) of the witnesses-in-court exemption that is in subsection (a) means that the legislature intends that only licensed appraisers may be "witnesses in court as to the value of real estate."
The court does not see in Conn. Gen. Stat. sec. 20-329 the same legislative intent that the defendant does. The court reads the CT Page 1783 legislative intent as being what the statute plainly says. Subsection (a) plainly says that witnesses in court as to the values of real estate do not, for that act alone, have to obtain a license as a real estate broker or salesman. A witness in court as to the values of real estate may have to obtain a license when, if he does not have a statutory exemption, he acts as a broker or salesman within the purview of Conn. Gen. Stat. sec.20-311 (1) or (2) and sec. 20-312, testifying in court as to the values of real estate, however, by itself, does not require him to get the license.
Subsection (b) plainly says, by the omission of the witnesses-in-court exemption, that witnesses in court as to the valuation of real estate do not have a blanket exemption from the licensing requirements for a real estate appraiser. In the absence of that blanket exemption, whether a witness in court as to real estate values must have a license to act as a real estate appraiser depends on whether he is a "real estate appraiser" or is "engaging in the real estate appraisal business" within the purview of Conn. Gen. Stat. sec. 20-311 (4) and (6) and sec. 20-312, and, if so, whether he has a statutory exemption.
The evidence establishes that on May 4, 1990, the appraiser for the plaintiff was subject to the licensing requirements for real estate appraisers but had no license to act as a real estate appraiser on that day. That does not mean, however, that he is disqualified to be a witness as to real estate values, even though Conn. Gen. Stat. sec. 20-329 (b) does not exempt witnesses as to real estate values from the licensing requirements. There is nothing in Conn. Gen. Stat. sec. 20-329 about disqualifying an unlicensed appraiser from being a witness. No other statute mandates that disqualification, and no statute authorizes the court to impose that disqualification. In the absence of a statute mandating or authorizing disqualification, the court will not impose it.
There is one further consideration. The plaintiff's rights in this case arise from the constitutional provision for just compensation when the state takes land by condemnation. Conn. Const. art. 1 sec. 11. A constitutional issue would arise if, as a result of the disqualification of this otherwise-qualified appraiser, the plaintiff is denied at this hearing an opportunity to present that expert's opinion in support of the plaintiff's claim to just compensation. In Thomaston v. Ives, 156 Conn. 166,174, 239 A.2d 515 (1968), the court said in a case where the state objected to having its own appraiser testify:
 We have in the present case, an eminent domain proceeding initiated by the state. The property owner is required to yield involuntarily to the sovereign's demand. The only question in issue is the fair value of the property seized. The single objective of the present proceeding is to ensure that the property owner CT Page 1784 shall receive, and that the state shall pay, the just compensation which the fundamental law promises the owner for the property which the state has seen fit to take for public use. All material and relevant information which will assist the trier in determining the sum of money which will constitute that just compensation should, in justice to both parties, be made available to him.
 II
The plaintiff's before-taking land, known as 184 Union Street was an irregularly-shaped parcel, with curving boundary lines. The testimony varied as to the number of square feet in the parcel. The appraiser for the defendant testified, on the basis of his examination of the records of the town assessor, that those records show that the parcel contains 11,000 square feet, plus or minus, and the appraiser for the defendant used that figure. The report of the appraiser for the plaintiff states that the parcel contains 12,977 square feet, more or less, and he used that figure. Exhibit 4 concerns a zoning variance, granted on August 9, 1989, on an application by the defendant pursuant to Conn. Gen. Stat. sec. 48-24, reducing the minimum lot size of 184 Union Street from 13,317 square feet, plus or minus, to 12,141 square feet, plus — or minus. Because the ultimate issue in this proceeding is the difference between the before-taking value of the plaintiff's land and the after-taking value of that land, these discrepancies in estimated area are not important inasmuch as each witness uniformly used his own assumed-area figure in his own before-and-after calculations.
According to the Assessment, the area that the defendant is taking consists of .027 of an acre, i.e. 1176 square feet. The taken land begins at at a point on West Street at the northeasterly corner of the plaintiff's land. At that point the east-to-west dimension of the taken land is approximately 11 feet. From the beginning point, the easterly line runs southerly and southwesterly about 145 feet in the west line of West Street and the north line of Union Street, gradually tapering down to an east-to-west dimension of about four feet. Thus, the taken area consists of all the before-taking frontage on West Street and a portion of the before-taking frontage on Union Street.
"`The owner of land taken by condemnation is entitled to be paid just compensation. Conn. Const. art. 1 sec. 1. If the taking is partial, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained of it thereafter.' Lynch v. West Hartford, 167 Conn. 67,73, 335 A.2d 42 (1974)." Minicucci v. Commissioner of Transportation,211 Conn. 382, 384, 559 A.2d 216 (1989). The appraiser for the defendant found the before-taking value of the plaintiff's land to be $196,000, CT Page 1785 plus $3000 for "contributory value of shrubbery wooded area." In arriving at his valuations, he made a thorough and detailed analysis of data relating to the sale, in 1987, of property situated on the northeasterly corner of the intersection of West Street and Union Street, thus opposite the plaintiff's land on West Street. That sale is not an arms-length sale, inasmuch as it is a sale to trustees of a trust for employees of the grantor, but the appraiser for the defendant made a 30% negative adjustment in the sale price for the aspect of the transaction. The court finds persuasive the analysis and reasoning of the appraiser for the defendant concerning the probative value of the sale of the property at the northeast corner of the intersection of West Street and Union Street, and the court finds the before-taking value of the plaintiff's land to be $196,000, as unimproved land, plus $3000 for the "shrubbery wooded area," a total of $199,000.
The appraiser for the defendant was of the opinion that the plaintiff sustained no severance damages. He found the after-taking fair market value of the land remaining after the taking to be $177,000. If the plaintiff sustained no severance damages or damages from the exercise of the Rights, issues to be considered hereinafter, the court concurs in the $177,000 after-taking finding. Consequently, the loss in fair market value of the plaintiff's land resulting from the taking of the plaintiff's land, independent of and in addition to any severance or Rights-damages the plaintiff may have sustained as a result of the taking, is $22,000.
 III
"When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of the portion of the property causes." Alemany v. Commissioner of Transportation, 215 Conn. 437,444, ___ A.2d ___ (1990). The appraiser for the plaintiff was of the opinion that the plaintiff sustained severance damages. The appraiser for the defendant was of the opinion, as noted previously, that the plaintiff sustained no severance damages. A resolution of the conflict between these two opinions requires an inquiry into the zoning status of the plaintiff's land, with particular regard to parking on it, because the appraisers differed concerning the loss of parking spaces on the remaining land.
The plaintiff's land is located in a Historic District-Residential Commercial Zone. In that zone, a special permit may be granted for a motor vehicle service station. On March 26, 1980, the plaintiff was granted a special exception for a limited repairer's license for 184 Union Street, subject to nine stipulations. Of these nine, three are relevant to the severance-damage issue: "2) Number of cars on property (or lot); five (5) maximum, to be parked in rear of building. 8) No overnight parking in front of building. 9) Certificate of Suitability granted for one (1) year at which time applicant must reapply and come CT Page 1786 before the Board." On July 20, 1981, the chairman of the zoning board of appeals notified the attorney for the plaintiff that the existing limited repair license for 184 Union Street was renewed, with eight stipulation, two of which are relevant: "2) Number of cars on property (or lot); five (5) maximum, to be parked in the rear of the building 8) No overnight parking in front of the building."
"The building" referred to in the stipulations is a two-bay service garage and business office at 184 Union Street. The office is at the easterly end of the building, which contains about 1200 square feet. The plaintiff has been carrying on there for approximately nine years a muffler-repair and radiator-repair business, and still carries on that business there. The regular hours of the business are 9:00 a.m. to 5:30 p. m. on Monday through Friday and 9:00 a.m. to noon on Saturday. During the nine years, customers parked their cars daily in the area between the office and the street, and customers still customarily park there, either to transact business in the office or to leave the car for servicing on that day. That daytime in-front-of-building parking at all times has been clearly visible both to pedestrians and to occupants of automobiles on Union Street and West Street, both of which are heavily traveled thoroughfares. At no time during those nine years did the plaintiff receive any complaint about the in-front-of-building parking, and at no time did the present zoning enforcement officer, who has held office since 1983, either receive or make a complaint about the in-front-of-building parking.
The no-severance-damages opinion of the appraiser for the defendant was based on his opinion that there can be no legally-cognizable loss off parking spaces in front of the plaintiff's building because stipulation No. 2 requires that all parking be at the rear of the lot. The opinion of the appraiser for the plaintiff was that the plaintiff sustained severance damages from the loss of parking space for five vehicles. Thus, the court must determine whether a before-taking prospective purchaser would consider it reasonably probable that the existing use with respect to parking in front of the building would be permitted to continue for a period of time sufficiently long to warrant allocating economic value to that existing use, and whether that same prospective purchaser would consider that economic value, if any, diminished by the loss of spaces for parking.
The court is of the opinion, and finds, that a willing and knowledgeable before-taking buyer and a willing and knowledgeable before-taking seller in the open market, each having particular knowledge of the zoning-and-use-history of the in-front-of-building parking-use, would conclude that that existing use would be permitted to continue for a period of time sufficiently long to warrant allocating economic value to that existing use, and that, consequently, loss of some parking space will diminish that economic value. This opinion and finding of the court is based, in turn, on the opinion of the court that the prospective seller and prospective buyer would find two considerations CT Page 1787 convincing and persuasive: first, that the language of stipulation No. 8, "No overnight parking in front of building," can logically be interpreted to mean that in-front-of-building parking is permissible during the day, and that stipulation was included in both the original approval and the renewal. Second, for nine years, there has been no action taken by anyone, including zoning enforcement officers, to challenge the continuous and open daytime in-front-of-building parking. Accordingly, the court finds that the fair market value of the plaintiff's remaining land will be diminished by the loss of space for parking in front of the building.
As noted previously, the appraiser for the plaintiff was of the opinion that the taking causes the loss of five parking spaces. At the northeast corner of the building the distance between the building and the street line would be reduced by the taking from approximately 51 feet to approximately 41 or 42 feet, and at the southeast corner of the building, from approximately 46 feet to approximately 40 feet. The court is not convinced from its view of the premises that there would be a loss off parking spaces for five cars, but there would be a loss of some parking space and a diminished convenience for parking. Further, from viewing the property, the court finds that a significant diminution in the value of the remaining land will result when the taking shortens by eleven feet, in the east-to-west dimension, the driveway-entrance leading from West Street. Ready accessibility from both West Street and Union Street is a valuable asset of 184 Union Street as a business location. The importance of that ready accessibility can be visualized by assuming a taking that would cause the office at 184 Union Street to be on the street line; the result would eliminate or greatly diminish drive-in business, an important source of income for muffler and radiator repairers.
The court finds that by reasons of the loss in some parking space and of the diminished accessibility to his remaining land, the value of the plaintiff's remaining land has been diminished by the taking in the amount of eight percent (8%) of the value of the remaining land. The value of the remaining land, exclusive of loss in value caused by severance, being $177,000, the court finds that the plaintiff has sustained severance damages in the amount of $14,160, in addition to and independent of any other damages, thereby reducing the fair market after-taking value of the plaintiff's land to $162,840.
With respect to any damages sustainable by the plaintiff from the exercise of the Rights, which, as noted previously, terminate on the completion of work by the defendant, the court is unable to make any determination as to the amount of those damages, if any, because there was no evidence presented as to the probable duration of the work or how the work would affect the fair market value of the plaintiff's land.
 IV
There remains for decision the claim of the defendant that the plaintiff is not entitled to have the court award, pursuant to Conn. Gen. CT Page 1788 Stat. sec. 13a-76, reasonable appraisal fees to the plaintiff, even though the damages awarded exceed the amount of the Assessment of the defendant. The gist of the claim of the defendant is that the agreement by the appraiser to perform appraisal services for the plaintiff is an illegal agreement because the appraiser was not then a licensed appraiser.
"`(E)very contract made for or about any matter or thing and made unlawful by statute is a void contract.'. . . (W)here the undertaking contracted for is itself forbidden by a statute making clear the Legislature's intention to prohibit that which the parties are seeking to accomplish, [that rule] squarely applies." Tator v. Valden, 124 Conn. 96,102, 198 A. 169 (1938). That rule has been specifically applied to hold contracts void where one party was in violation of a statute requiring that he have a license to perform the service that he was performing, and for which he was seeking compensation. Domizio v. Delahunty, 36 Conn. Sup. 321, 322, 419 A.2d 912 (1980); Peniche v. Aeromexico, 580 S.W.2d 152, 155 from acting as a real estate appraiser without a license, unless exempted.
The question presented is whether the appraisal-fee provision of Conn. Gen. Stat. sec. 13a-76 was intended to apply even if the agreement with the appraiser was void, and hence the land owner would not be liable for the appraisal fee. Would the legislature intend that a land owner should get an appraisal-fee award that he could then pocket as his own, in addition to his just compensation, because he would be under no legal obligation to pay the appraisal-fee award to the appraiser? The apparent purpose of the award of appraisal fees is to enable the land owner to retain his just compensation without having the compensation reduced by any amount that the land owner might otherwise have to pay for appraisal fees, but not to supplement that just compensation by an award of appraisal fees that he could legally retain. The court holds that the plaintiff is not entitled to an award of appraisal fees under Conn. Gen. Stat. sec. 13a-76.
 V
In sum, the court finds that the plaintiff has sustained, as a result of the taking by the defendant, damages of $22,000 for the taking of .027 of an acre and severance damages of $14,160 for the diminished fair market value of the plaintiff's remaining land. The court finds that the after-taking fair market value of the plaintiff's land is $162,840 and that the before-taking fair market value of the plaintiff's land was $199,000, and that, therefore, the after-taking fair market value of the plaintiff's land is $36,160 less than the before-taking fair market value of the plaintiff's land. Judgment may enter, therefore, for the plaintiff in the amount of $36,160, less the amount of $22,000 already paid, or an excess of $14,160, with statutory interest, which the court finds is fair, just and reasonable, from the date of the taking to the date of payment, on such excess, and costs. CT Page 1789
State Trial Referee