## STEPHANIE LICAMELE *v.* MICHAEL LICAMELE III

Superior Court          Judicial District of          File No. FA02-0390988S
                        Fairfield at Bridgeport

Memorandum filed July 16, 2002

*Michael D'Onofrio, Jr.*, for the plaintiff.

*Daniel D. Portanova*, for the defendant.

*Amendola & Amendola*, guardian ad litem, for the minor children.

HON. EDGAR W. BASSICK III, JUDGE TRIAL REFEREE. This is an action for the dissolution of a marriage brought by Stephanie Licamele, the plaintiff wife, against Michael Licamele III, the defendant husband. The parties were married on May 27, 1995, in Mattituck, New York. There are three children issue of the marriage, two boys, five and two years of age, and a girl, three years of age. There is a separate injunction proceeding in which the defendant sought custody of the

minor children and an order that the plaintiff's visitation with the minor children be supervised. The court, *Hiller, J.*, granted the injunction and ordered the parties to have joint physical custody of the children. The court also ordered that the plaintiff have assistance in caring for the children. The order in the injunction proceeding was entered as an order in the dissolution proceeding and a further order entered for the defendant to pay for the child care assistance.

The plaintiff has employed several child care providers since the court order and has paid them all directly out of borrowed funds. The plaintiff has submitted invoices to the defendant in the amount of $3505. Of this amount, the defendant has paid $1311. The defendant disputes the remaining amount of $2152[1] claiming that these charges were for child care assistance by three women whom the defendant claims are undocumented aliens. The parties have agreed that for purposes of this proceeding that the court may consider this to be true. On May 15, 2002, the plaintiff filed a motion for contempt for the defendant's failure to reimburse her for child care expenses. The defendant claims that his reimbursement to the plaintiff would be in violation of the federal Immigration Reform and Control Act of 1986 (Immigration Reform Act), 8 U.S.C. § 1101 et seq.

The defendant claims that this court, by ordering the defendant to reimburse the plaintiff, will be lending its assistance toward carrying out the terms of an illegal contract. See *Tator* v. *Valden*, 124 Conn. 96, 101, 198 A. 169 (1938). Both parties have cited *Dowling* v. *Slotnik*, 244 Conn. 781, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). The defendant argues that our Supreme Court in *Dowling* made clear that Connecticut courts will not take action that conflicts with the goals

---

[1] There is an unexplained difference of $42.

of the Immigration Reform Act. The plaintiff, on the other hand, argues that she is not asking the Connecticut courts to take action that conflicts with the Immigration Reform Act, but, rather, that she have reimbursement for moneys she has already paid out. She points out that *Tator* states that the court will not lend assistance in enforcing a contract "the inherent purpose of which is to violate the law." (Internal quotation marks omitted.) *Tator* v. *Valden*, supra, 101. She argues that this was not true in the present case.

The defendant argues that it does not matter whether he pays the illegal aliens directly or reimburses the plaintiff for payments to them. His argument is that in order to seek reimbursement, the plaintiff must first establish her illegal act. To then force the defendant to reimburse the plaintiff for her illegal act contravenes both the spirit and the letter of the Immigration Reform Act. The plaintiff in the present case, however, seeks reimbursement from the defendant. She need not establish the act of hiring; only that she has hired individuals for child care assistance and paid them for that assistance.

Both parties have, as indicated previously, cited the only Connecticut case involving the Immigration Reform Act, and that is *Dowling*. The Supreme Court held in *Dowling* that an illegal alien, who worked as a domestic employee, could claim workers' compensation benefits after an on-the-job injury. *Dowling* v. *Slotnik*, supra, 244 Conn. 806. The court further held that the employment constituted a " 'contract of service.' " Id., 807. The court stated: "[W]e also conclude that judicial enforcement of the claimant's rights under the Workers' Compensation Act cannot be used to undermine either the common-law doctrine against judicial enforcement of 'illegal' contracts, or the effect, if any, that doctrine may have upon the enforceability of both

the claimant's and the respondents' contractual rights under their employment agreement." Id., 811.

The contractual arrangement here was between the plaintiff and the child care assistance workers. The defendant had no contractual relationship with them. The defendant, by reimbursing the plaintiff for her child care expenses, is neither breaking the law nor is he in any way violating the Immigration Reform Act.

To find contempt, the court must find the defendant wilfully and intentionally failed to do as the court ordered him to do. The court cannot so find in the present case since the defendant believed his position with respect to reimbursement was correct. The court, however, does order that he pay the plaintiff the balance of the funds she has paid to date for her child care assistance. The court further orders that the defendant reimburse the plaintiff on a weekly basis for all future court-ordered child care expenditures.