[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR CONTEMPT DATED MAY 15, 2002
This is an action for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on May 27, 1995 in Mattituck, New York. There are three children issue of the marriage, two boys ages five and two and a girl age three. There is a separate injunction proceeding in which the defendant sought custody of the minor children and an order that the plaintiff's visitation with the minor children be supervised. The court (Hiller, J.) granted the injunction and ordered the parties to have joint physical custody of the children. The court also ordered that the plaintiff have assistance in caring for the children. The order in the injunction proceeding was entered as an order in the dissolution proceeding and a further order CT Page 9010 entered for the defendant to pay for the child care assistance.
The plaintiff has employed several child care providers since the court order and has paid them all directly out of borrowed funds. The plaintiff has submitted invoices to the defendant in the amount of $3,505. of this amount, the defendant has paid $1,311. The defendant disputes the remaining amount of $2,152[1] claiming that these charges were for child care assistance by three women whom the defendant claims are undocumented aliens. The parties have agreed that for purposes of this proceeding that the court may consider this to be true. On May 15, 2002, the plaintiff filed a Motion for Contempt for failure to reimburse the plaintiff for her child care expenses. The defendant claims that his reimbursement to the plaintiff would be in violation of the Immigration Reform and Control Act of 1986 (herein referred to as "IRCA"),8 U.S.C. § 1101, et seq.
The Immigration Reform Act makes it unlawful to knowingly employ unauthorized workers. 8 U.S.C. § 1324a (a). Civil fines may be imposed and criminal punishment may be inflicted for violation of this provision.
The defendant claims that this court, by ordering the defendant to reimburse the plaintiff, will be lending its assistance toward carrying out the terms of an illegal contract. See Tator v. Valden, 124 Conn. 96,101 (1938). Both parties have cited the case of Dowling v. Slotnick,244 Conn. 781 (1998). The defendant argues that the Supreme Count in theDowling case made clear that Connecticut courts will not take action that conflicts with the goals of IRCA. Plaintiff, on the other hand, argues that she is not asking the Connecticut courts to take action that conflicts with the IRCA, but rather that she have reimbursement for monies she has already paid out. She points out that Tator states that the court will not lend assistance in enforcing a contract "the relevant purpose of which is to violate the law." She argues that this was not true in this case.
The defendant argues that it does not matter whether he pays the illegal aliens directly or reimburses the plaintiff for payments to them. His argument is that in order to seek reimbursement the plaintiff must first establish her illegal act. To then force the defendant to reimburse her for her illegal act contravenes both the spirit and the letter of the IRCA. However, the plaintiff in this case seeks reimbursement from the defendant. She need not establish the act of hiring only that she has hired individuals for child care assistance and paid them for that assistance.
Both parties have cited the only Connecticut case involving Immigration CT Page 9011 Reform and Control Act of 1986 and that is Dowling v. Slotnick,244 Conn. 781 (1998). The Connecticut Supreme Court there held that an illegal alien who worked as a domestic employee could claim workers' compensation benefits after an on the job injury. The court held that the employment agreement between an illegal alien and her employer constituted a "contract of service." Supra at 807. The court stated: "We also conclude that judicial enforcement of the claimant's rights under the Worker's Compensation Act cannot be used to undermine either the common law doctrine against judicial enforcement of "illegal" contracts, or the effect, if any, that doctrine may have upon the enforceability of both the claimant's and the respondent's Constitutional rights under their employment agreement." Supra at 811.
The contractual arrangement here was between the plaintiff and the child care assistance workers. The defendant had no contractual relationship with them. The defendant, by reimbursing the plaintiff for her child care expenses, is not breaking the law nor is he in anyway violating the IRCA.
To find contempt, the court must find the defendant wilfully and intentionally failed to do as the court ordered him to do. The court cannot so find in this case since the defendant believed his position with respect to reimbursement was correct. However, the court does order that he pay the plaintiff the balance of the funds she has paid to date for her child care assistance. The court further orders that the defendant reimburse the plaintiff on a weekly basis for all future court ordered child care expenditures.
 EDGAR W. BASSICK, III JUDGE TRIAL REFEREE